**WESTERN LIFE INSURANCE COM-
PANY, Plaintiff,**

v.

**Dan NANNEY, Administrator, etc., et al.,
Defendants.**

**Civ. A. No. 2229.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Aug. 15, 1968.

Roy C. Nelson, Elizabethton, Tenn., for plaintiff.

Lewis B. Merryman, Robert E. Banks, Elizabethton, Tenn., S. J. Milligan, Greeneville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

The Court is asked to approve as to the minor defendants a settlement of conflicting claims to the proceeds of a policy of life insurance interpleaded in this Court by the plaintiff. A full hearing was held by the Court on August 7, 1968, and the matter has been under advisement since.

The interpleaded fund amounts to $45,642.21. The proposed settlement is on the basis of deduction from the fund of the costs of this action, a contribution to the plaintiff's attorney fees herein, and a division of the remainder so that the defendant Mrs. Toni Nanney will receive $3,000 more than her children, the minor defendants Donald Eugene Nanney, Joseph Charles Nanney, and Johnny Nanney.

Whether the Court should impress this fund to defray the interpleading plaintiff's costs and attorney's fees involves judicial discretion; rarely are they allowed as a matter of course. Paul Revere Life Insurance Company v.

Riddle, D.C.Tenn. (1963), 222 F.Supp. 867, 868 [1] and [2], and cases therein cited. It is true that the plaintiff as interpleader has no interest in which of the contesting defendants obtains the fund which it has given bond to pay on order of this Court and, by giving the bond, it has in a sense preserved the fund for the benefit of the party or parties who shall eventually receive it. Cf. Terry v. Supreme Forest, Woodmen Circle, D.C. Tenn. (1926), 21 F.2d 158. But, this plaintiff had a more self-serving interest here, *viz.*: it is required to pay the proceeds of the life insurance policy to either the initial beneficiary or the secondary beneficiaries. If it paid such proceeds to the wrong beneficiary, it could conceivably be compelled to pay the sum twice. By obtaining a court adjudication, it negates this risk. By paying the actual fund into the registry of the Court, it could have stopped the running of interest thereon, but in no event could it simultaneously receive the cost of the premium on its bond and stop the running of interest on the fund. Great Lakes Transit Corp. v. Marceau, C.C.A. 2d (1946), 154 F.2d 623. As the plaintiff had a substantial controversy with the defendant Mrs. Nanney and her children,[1] the allowance of its costs and attorney's fees[2] will be refused. Century Insurance Company v. First National Bank, C.C.A.5th (1939), 102 F.2d 726, 729 [10], certiorari denied (1939), 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 478. The plaintiff and its attorney will be left to settle the matter of his proper fee herein.

The Court is of the further opinion that it is improper to deduct from the fund in which the minor defendants will share the amount of $66.95 to reimburse counsel for the defendant Mrs. Nanney for his necessary expenses.

---

1. Civil action no. 2198, this District and Division, originally filed in a state court on March 12, 1968 and removed to this Court by Western Life Insurance Company as defendant, was in active status at the time Western Life brought this interpleader action on June 13, 1968.

2. The plaintiff's attorney herein testified that his services were reasonably worth $1,000 to $1,500, although all he did was research, prepare and file the interpleading complaint!

While, very commendably, she has agreed to the proposed settlement because the part of the fund which will not be paid to her will be paid to her children, they ought not to be required to pay any part of her attorney's fee and expenses. She is receiving $3,000 more than they in the settlement, and the aforementioned expense reimbursement represents only a nominal amount of money.

█ The Court is dealing here with a Florida contract. For the minor defendants to recover all the interpleaded fund, it will be necessary for them to prove by a preponderance of the evidence that their claim their father was killed by the intentional and wrongful act of their mother, who is the primary beneficiary under the insurance policy the plaintiff issued on the life of their father. See Carter v. Carter (1956), Fla. 88 So.2d 153, 158 [5]. She has heretofore been acquitted under an indictment charging her with conspiring to murder her husband, in a case in which her codefendant and former lover pleaded guilty.

The attorneys for the minor defendants did an excellent job of preparing to establish such proof. One of them was in attendance continuously at the aforementioned murder trial, which lasted for eight days, and another was there nearly all the time. One of these attorneys is of the professional opinion that there is only a 50-50 chance that his clients can prove by a preponderance of the evidence that Mrs. Nanney wrongfully and intentionally killed her husband. One of his associates believes that there is slightly better than an even chance. The attorney for Mrs. Nanney expressed the opinion that the minor children's chances of success are only 25%.

All the attorneys who testified were of the opinion that it would cost the minor defendants several thousands of dollars to compel the attendance on a trial of some 25 witnesses from Miami, Florida, including experts whose services must be compensated specially.[3] These children have no personal estates.

█ In deciding whether the compromise offered is in the best interests and to the advantage of the minor defendants, the Court considers the amount of the fund in its totality, as well as the amount offered these children; the character of the evidence which they must present to recover the whole fund; the expenses incident to the procurement of the necessary testimony; and, the possibility that they might lose all [4] interest in the fund. Cf. Rafferty v. Rainey, D.C.Tenn. (1968), 292 F.Supp. 152.

█ With the case in this posture, subject to the chances mentioned herein, the Court is of the opinion that it is to the advantage of the minor defendants for the proposed settlement to be approved. It appears that, if the issue is whether Mrs. Nanney wrongfully and intentionally killed her husband, testimony or other evidence that another person had already admitted killing her husband would be admissible herein. This single fact suggests the strong possibility that one or more jurors might be persuaded that Mrs. Nanney did not kill her husband if someone else had already admitted that act.

█ The Court finds from the evidence that a fair and reasonable fee for the attorneys for the minor defendants is 25% of their recovery in the settlement. The Court will approve an order embodying this provision, provided there are no other deductions from any part of the fund which these children will re-

---

3. The defendant Mrs. Nanney will not stipulate the transcripts of the evidence in this and collateral trials to obviate this necessity herein.

4. The burden of proving that Mrs. Nanney wrongfully and intentionally killed her █

husband being on the minor defendants, the Court visualizes the possibility of a mistrial for inability of a jury to agree, which would result in payment of the entire fund to Mrs. Nanney.

ceive. While the Court's action in requiring the tedium of full explanation of the reasons for the settlement proposed and the reasonableness of proposed fees and expenses is not calculated to enhance the popularity of the Court, the onus upon the Court in protecting the interests of persons under disability of minority is clear, and this judge is under the sworn duty to so administer justice in this Court. Jurists who are unable to "stand the heat" of unpopularity in the profession ought to "stay out of the kitchen".

The order will include a provision that no part of the fund shall be paid to or in behalf of the defendant Mrs. Nanney until the matter of the claim of Kelner and Lewis, Esqs. of a lien for their services to her as attorneys, see T.C.A. §§ 29–202 and 29–203; Gangewere v. Bernstein, D.C.N.Y. (1961), 199 F.Supp. 38, 39–40 [2], [4]; cf. Cummings v. Patterson, C.A.Tenn. (1964), 54 Tenn.App. 75, 388 S.W.2d 157, 166 [8]; Falcone v. Hall, (1956), 98 U.S.App.D.C. 363, 235 F.2d 860, 862 [1, 2], [4, 5], has been further adjudicated or lawfully settled by compromise.