In re ROBBY'S PANCAKE HOUSE OF FLORIDA, INC., Debtor.

ROBBY'S PANCAKE HOUSE OF FLORIDA, INC., Plaintiff,

v.

R.K. WALKER, d/b/a Walker Construction Company; Warren Brothers, a Division of Ashland Oil, Inc.; Ward S. Whelchel; H. David Cate; The United States of America; Metro Painting Co., Inc.; Acoustics, Inc.; Viking Equipment Company; C T Construction Company and Universal Modular Ind., Inc. (James L. Clayton, Trustee); Mizell Brothers Company; Jim Lifford Lumber Company; Standard Glass and Supply Company; David L. Sheley and wife, Barbara Sheley; Powell-Newman, Inc.; Jack W. Bowers, Defendants.

Bankruptcy No. 3-81-01326.
Adv. No. 3-81-0824.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 4, 1982.

Erma G. Greenwood, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for plaintiff.

Ward S. Whelchel, Gillenwater, Whelchel & Nichol, Knoxville, Tenn., pro se and for R.K. Walker, d/b/a Walker Const. Co., and for H. David Cate.

K. Karl Spalvins, Knoxville, Tenn., for Warren Brothers, A Division of Ashland Oil, Inc.

Robert E. Simpson, Knoxville, Tenn., for the United States of America.

Doris C. Allen, Bernstein, Susano, Stair & Cohen, Knoxville, Tenn., for Universal Modular Ind., Inc.; Mizell Brothers Co.; David L. Sheley and wife, Barbara Sheley.

Douglas L. Dutton, Hodges, Doughty & Carson, Knoxville, Tenn., for Metro Painting Co., Inc.

John H. Fowler, Fowler & Rowntree, Knoxville, Tenn., for Acoustics, Inc.

R. Thomas Stinnett, Steven D. Lipsey, Stone & Hinds, Knoxville, Tenn., for Standard Glass and Supply Co.

Jack W. Bowers, pro se.

Mary Beth Leibowitz, Knoxville, Tenn., for Powell-Newman, Inc.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The task before the court is to determine the relative priorities among fifteen parties to the proceeds of a judgment entered against the Chapter 11 debtor, Robby's Pancake House of Florida, Inc., prior to the filing of the debtor's bankruptcy petition. The common denominator of the claimants is that each is a creditor of R.K. Walker, who holds an unsatisfied judgment in the principal amount of $91,537.60 against Robby's.[1] This judgment was entered on February 4, 1981, by the Knox County Circuit Court. The report of a Special Master, H. David Cate, was confirmed and incorporated by reference in the circuit court judgment. Unfortunately, the claims of R.K. Walker's creditors asserted herein substantially exceed the amount of the circuit court judgment and consequently must be ranked.

## I

On June 25, 1981, Robby's Pancake House of Florida, Inc. filed a complaint in the Knox County Chancery Court. Robby's named fifteen defendants as claimants to the Walker judgment proceeds and requested a declaratory judgment determining the rights of the parties and a restraining order staying any further collection action by the defendants. Thereafter, on August 24, 1981, Robby's filed a voluntary Chapter 11

1. The claimants to the Walker judgment proceeds are designated as a separate class of creditors in the Chapter 11 plan of reorganization filed by Robby's and confirmed by the

bankruptcy petition. A petition to remove the declaratory judgment action which had been commenced by Robby's was filed by R.K. Walker on September 28, 1981. The case was removed to this court pursuant to the provisions of 28 U.S.C.A. § 1478(a) (Supp.1982).

## II

The claimants and the basis of their respective claims are identified in the following table in the sequence of discussion in section III of this opinion:

| CLAIMANT | ALLEGED BASIS FOR CLAIM |
|---|---|
| Ward S. Whelchel | Statutory Attorney's Lien (Tenn. Code Ann. § 23–2–102 (1980)) |
| H. David Cate | Special Master's Fee (Tenn. Code Ann. § 20–12–119 (1980)) |
| Jack W. Bowers | Statutory Attorney's Lien (Tenn. Code Ann. § 23–2–102 (1980)) |
| Robby's Pancake House of Florida, Inc. | Costs and attorney fees connected with this declaratory action |
| Internal Revenue Service | a) Notice of Federal Tax Liens (five in number) (26 U.S.C.A. §§ 6321, 6323 (1967)) b) Notice of Levy (two in number) (26 U.S.C.A. § 6331 (1967)) |
| Metro Painting Company, Inc. | a) Agreed Final Judgment b) Garnishment Lien (Tenn. Code Ann. § 26–2–202 (1980)) |
| Acoustics, Inc. | Garnishment Lien (Tenn. Code Ann. § 26–2–202 (1980)) |
| Mizell Brothers Company | Garnishment Lien (Tenn. Code Ann. § 26–2–202 (1980)) |
| Universal Modular Industries, Inc. | Garnishment Lien (Tenn. Code Ann. § 26–2–202 (1980)) |
| Warren Brothers Company, Inc. | Judgment Lien |
| Powell-Newman, Inc. | Garnishment Lien (Tenn. Code Ann. § 26–2–202 (1980)) |
| Standard Glass and Supply Company | Assignment |
| David Sheley and Barbara Sheley | Subrogation to rights of Standard Glass |
| R. K. Walker | Rights to any surplus after payment of valid claims. |
| * Jim Lifford Lumber Company | — |
| * Viking Equipment Company | — |

* These parties have failed to respond and are in default.

court on September 1, 1982. This plan provides that the debtor will pay the full amount of the Walker judgment, plus interest, not later than November 30, 1982.

III

A.

COMPENSATION OF ATTORNEYS AND
SPECIAL MASTER

On December 20, 1977, Ward S. Whelchel filed a complaint on behalf of R.K. Walker, d/b/a Walker Construction Company, against Robby's Pancake House of Florida, Inc. wherein damages were requested for breach of contract. A judgment was entered on October 31, 1978, in favor of Walker by the Knox County Circuit Court. That judgment was appealed by Robby's and the case was remanded to the circuit court with directions to redetermine the amount of damages which Walker was entitled to recover from Robby's. In accordance with the suggestion of the court of appeals, the circuit court appointed a Special Master, H. David Cate, to adjudicate the amount of damages. His findings were confirmed and incorporated by reference in the February 4, 1981, judgment of the circuit court. Under the terms of that judgment, R.K. Walker was awarded judgment in the amount of $91,537.60 against Robby's (Tr. Exh. 6).

The terms of the February 4, 1981, circuit court judgment also provide that: (1) Ward S. Whelchel is entitled to an attorney fee for services to date in the amount of $34,-937.78 and a lien for attorney fees and expenses is impressed upon the proceeds of the judgment; (2) H. David Cate, Special Master, is awarded a fee of $10,000.00, which is to be borne equally by Walker and Robby's. A lien is also impressed upon the proceeds of the judgment for the satisfaction of the Special Master's fee.[2]

It is Whelchel's position that he is entitled to an attorney's lien in the amount of $39,293.78,[3] as of November 20, 1981, by virtue of the provisions of Tenn.Code Ann. § 23–2–102 (1980), which provides that: "Attorneys and solicitors of record who be-

gin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." Whelchel contends that his claim is superior to the interests of all of the other parties in this action.

It is suggested by Cate that his fee award as Special Master, which was granted by the circuit court judge, is a fee within the discretion of the trial judge authorized by Tenn.Code Ann. § 20–12–119 (1980), which states:

Discretion of judge.—(a) In all civil cases, whether tried by a jury or before the court without a jury, the presiding judge shall have a right to adjudge the cost. (b) In doing so, he shall be authorized, in his discretion, to apportion the cost between the litigants, as in his opinion the equities of the case demand.

Cate further suggests that his fee as Special Master should be considered a cost of administration and that his claim has a priority equal to that of a statutory attorney's lien.

Jack W. Bowers has a claim against R.K. Walker in the amount of $1,712.50. This claim was reduced to judgment on February 16, 1978, in the Knox County General Sessions Court. Bowers states that the judgment amount represents the sum owed to him by Walker for attorney fees for services in connection with Walker's breach of contract suit against Robby's. Bowers asserts that he is also entitled to an attorney's lien and that his claim is entitled to a priority equal with the claim of Whelchel and Cate and superior to the claims of the remaining parties.

The final claim among this group is that of Robby's for its costs and attorney fees for this declaratory action. It is Robby's contention that the instant declaratory action is for the mutual benefit of R.K. Walker, the creditors named herein, and Robby's itself.

2. The judgment actually awards judgment in favor of H. David Cate in the amount of $5,000.00 against Robby's Pancake House of Florida, Inc. and in the amount of $5,000.00 against R.K. Walker, d/b/a Walker Construction Company.

3. This sum includes the amount awarded to Whelchel in the February 4, 1981, judgment of the circuit court plus expenses and fees subsequent to the entry of that judgment for services rendered in preserving and enforcing the judgment.

■ Several of the parties have conceded the priority of Whelchel and Cate. The court concurs in this concession and finds that Whelchel and Cate are entitled to first priority in the distribution of the judgment proceeds, subject only to the deduction of the sum of Robby's costs herein plus the amount of a reasonable fee for its attorney for services directly related to this declaratory action.

Whelchel's answer reflects that the amount of his claim secured by an attorney's lien has increased from $34,937.78, as stated in the February 4, 1981 judgment, to $39,293.78, as of November 20, 1981. The increase represents $4,350.00 in fees and $6.00 in expenses for services rendered since February 1, 1981. Whelchel has filed an itemization of his services subsequent to the entry of the February 4, 1981, circuit court judgment. The fee for post-judgment services is not unreasonable. The court finds that the amount of Whelchel's claim is $39,293.78 plus interest, at the appropriate legal rate, since November 20, 1981.

H. David Cate was awarded a fee of $10,000.00 for his services as Special Master in connection with the breach of contract action of Walker against Robby's. That fee was to be paid by Walker and Robby's. The circuit court judgment provides in pertinent part:

> [I]t is ordered that H. David Cate have judgment against Robby's ... in the amount of Five Thousand and No/100ths ($5,000.00) Dollars and ... against R.K. Walker, d/b/a Walker Construction Company, in the amount of Five Thousand and No/100ths ($5,000.00) Dollars, with a lien to be impressed upon the proceeds of this judgment of R.K. Walker ... for satisfaction of Special Master's judgment.

The court concludes that Cate is entitled to receive $5,000.00 of the fee award, plus interest at the appropriate legal rate, from the judgment proceeds in satisfaction of *Walker's* liability therefor. Robby's remains indebted to Cate for its share of the Special Master's fee. Clearly the court could not award $10,000.00 from the judgment proceeds to Cate since the effect would be to extinguish a $5,000.00 liability of Robby's with money to which Walker, more precisely his creditors, is entitled.

■ Jack W. Bowers also contends that he is entitled to an attorney's lien for services rendered on behalf of Walker. Tenn. Code Ann. § 23–2–102 (1980) creates a lien in favor of an attorney "of record who begin(s) a suit ...." A suit is begun by the filing of a complaint. Bowers did not file a suit on behalf of Walker and consequently he was never an attorney of record for Walker. Thus, Bowers is not entitled to a lien against the judgment proceeds in dispute.

■ Robby's requests an award for attorney fee and cost in connection with this declaratory action. The rule in Tennessee is that a party to civil litigation is not entitled to have his attorney fee paid by an opposing party absent a contractual or a statutory right or a recognized equitable ground. *State v. Thomas,* 585 S.W.2d 606 (Tenn.1979). Although there is neither a contractual nor a statutory right providing the basis for an award to Robby's for its attorney fee, this court believes that such an award is proper on equitable grounds. Robby's has no unsettled controversy with any of the parties to this declaratory action. Instead, Robby's occupies the position of a stakeholder of funds to which creditors of R.K. Walker are entitled. Confronted with numerous competing claims to the judgment proceeds owed by Robby's to Walker and uncertain of the priority of those claims, Robby's filed a declaratory action to obtain judicial assistance in determining the priorities of the competing claims. The declaratory action is in the nature of a bill of interpleader. Whether a court should allow a party who commences an interpleader action to recover the expense of his attorney fee and costs of the action is a matter committed to judicial discretion. *Western Life Insurance Company v. Nanney,* 290 F.Supp. 687, 688 (E.D.Tenn.1968). In the exercise of its discretion, this court believes that it is appropriate to permit Robby's to deduct the amount of its costs herein and a reasonable attorney fee from the amount of

the judgment owed to R.K. Walker, which the court determines to be $750.00. This decision is attributable to the fact that Robby's has no dispute with the defendant creditors of Walker and merely seeks to satisfy its liability on the judgment in Walker's favor by paying Walker's creditors in accordance with the priority of their claims, which certainly requires judicial determination.

### B.

### CLAIMS OF INTERNAL REVENUE SERVICE AND METRO PAINTING COMPANY, INC.

The *Internal Revenue Service* asserts a claim for unpaid employment taxes, in the amount of $26,942.15, inclusive of interest and penalties as of June 30, 1981. The United States, on behalf of IRS, has not asserted that its tax claim is either superior or inferior to the claim of any other party herein. Instead, the United States has merely requested that the court determine the priority of the competing claims.

Five notices of federal tax lien were filed for registration in Knox County against Robert Walker on the following dates and for the amounts stated:

| Date of Filing | Amount |
| --- | --- |
| 12/1/77 | $8,336.07 |
| 1/24/78 | $3,457.58 |
| 3/10/78 | $1,749.30 |
| 5/17/78 | $2,325.49 [4] |
| 8/7/78 | $2,321.12 |

Additionally, two notices of levy, in the respective amounts of $23,556.01 and $3,386.14 were served on Robby's by IRS on June 2, 1981.[5] It is the contention of IRS that these levy notices effected a seizure of the property and the rights of R.K. Walker then in possession of Robby's to the extent of $26,942.15.

Thus, the claim of IRS is based on the filing of five separate notices of federal tax lien, filed between December 1, 1977, and August 7, 1978, and two notices of levy served on Robby's on June 2, 1981.

■ The statutory basis for the IRS liens is 26 U.S.C.A. § 6321 (1967). Under the provisions of that statute, the United States has a lien "upon all property and rights to property, whether real or personal," belonging to a person who fails to pay any federal tax for which he is liable. This statutory lien, however, is inferior to the rights of a "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof ... has been filed ...." 26 U.S.C.A. § 6323(a) (1967).[6] The liens do extend to the chose in action which Walker had against Robby's as of the dates of the filing of notices of the tax liens. *See Worley v. United States,* 340 F.2d 500, 502 (9th Cir.1965); *United States v. Hubbell,* 323 F.2d 197, 200 (5th Cir.1963).

The January 31, 1978, "Agreed Final Judgment" on which *Metro Painting* bases its lien claim contains the following provision:

1. The Final Judgment in favor of *Metro Painting Company, Inc. against Laforce-Walker Construction Company, Inc.,* Knox County Circuit Court Docket No. 3–103–77 entered July 1, 1977, for the sum of $5,082.92 is a valid and Final Judgment as of said date against Robert K. Walker individually. If Robby's Pancake House of Florida, Inc., ever pays any further monies to Robert K. Walker for the construction of Robby's ... on Kingston Pike in Knoxville ... it shall

---

**4.** Notice of Federal Tax Lien under Internal Revenue Laws, form 668, contains a block for the insertion of the name of the taxpayer. That block in the notice filed on May 17, 1978, is completed as follows: "LaForce-Walker Construction Co., a partnership, Kermit LaForce, a partner, Robert Walker, a partner." There is no evidence in the record that the May 17, 1978, notice was indexed under the name of either Robert Walker or R.K. Walker.

**5.** These notices were based on the same assessments described in the five notices of federal tax lien.

**6.** The federal tax lien is inferior to an attorney's lien that is enforceable under local law, to the extent that the lien is for reasonable compensation. 26 U.S.C.A. § 6323(b)(8) (1967).

pay the first $5,082.92 of any such payment to Metro Painting Company, Inc. (Emphasis added.)

The agreed judgment also provided that Metro would be prohibited from taking any further action to execute on its judgment until the conclusion of Walker's breach of contract action against Robby's, provided that Walker paid one-half of the Metro judgment amount ($2,541.46) on or before February 2, 1978.

Metro cites *S & S Gasket Co., Inc. v. United States,* 635 F.2d 568 (6th Cir.1980), in support of its claim of priority vis-a-vis the federal tax liens. *S & S Gasket* involved a priority contest between the holder of an unpaid Alabama judgment, who had commenced an action in Tennessee to enforce the foreign judgment, and the IRS, which had filed a tax lien notice in the appropriate Tennessee county during the interval between the commencement of the suit to enforce the foreign judgment and the entry of the final judgment of the Tennessee court. Prior to the filing of the notice of the federal tax lien and the issuance of the notice of levy, the judgment creditor in *S & S Gasket* requested a writ of attachment resulting in the deposit in the registry of the court, by a third party debtor of its judgment debtor, of an amount equal to the amount of its judgment. The court of appeals held that the judgment creditor was entitled to priority because that creditor's interest had *attached* to the funds in issue *prior* to the filing of the notice of the federal tax lien.

■ There is a crucial distinction between the position of the judgment creditor in *S & S Gasket* and that of Metro in the instant case. The interest of Metro based on its January 31, 1978 judgment against Walker had *not attached* to the chose in action of Walker against Robby's when notices of the federal tax lien were filed. The record in this case does not include any documentation which reflects that Metro obtained a lien by either execution or garnishment based on its "Agreed Final Judgment" against Walker and Robby's. That judgment, in and of itself, without some supplemental action on the part of Metro, could not, and has not, become an enforceable lien against either Walker's chose in action against Robby's or the judgment proceeds related thereto as against any parties other than Robby's and Walker.[7] Furthermore, the August 9, 1977, garnishment served upon Robby's by Metro, which the court admitted into evidence after the close of the proof, did not create a lien in favor of Metro against the chose in action which ultimately produced the February 4, 1981, judgment in favor of Walker against Robby's. That garnishment was based on a July 1, 1977, judgment in favor of Metro against LaForce-Walker Construction Company, Inc., and therefore could not have attached to the property of R.K. Walker. The January 31, 1978, "Agreed Final Judgment" among Metro Painting, Walker and Robby's does provide that Robert K. Walker is personally liable for the July 1, 1977, judgment of Metro against LaForce-Walker Construction Company, Inc. However, this provision obviously cannot operate to create a garnishment lien against the individual property of Robert K. Walker by basing its genesis upon the August 9, 1977, garnishment issued pursuant to a judgment against either a corporation or other business association.[8] In summary, Metro does not have a valid lien of any nature against the judgment proceeds in issue as against any party other than Robby's and Walker.

Acoustics, Standard Glass and Warren Brothers each concede that a portion of the IRS claim outranks their respective claims. However, these claimants challenge the lien claim of the IRS based on the May 17, 1978, notice of federal tax lien which apparently

---

7. The certified copy of the January 31, 1978, "Agreed Final Judgment" (Tr. Exh. 3) reflects that the judgment was filed on November 6, 1981, in the Register's office for Knox County. However, this filing does not create a lien against the fund in issue.

8. LaForce-Walker Construction Company, Inc. had failed to comply with the Tennessee incorporation statutes and was not duly incorporated when the July 1, 1977, judgment in favor of Metro was entered against it.

was indexed under the name LaForce-Walker Construction Co. It is their position that this notice does not perfect a lien against the property of Walker since the notice was not indexed under his name.

The United States has cited ten cases that purportedly support the proposition that notice of a federal tax lien filed in the name of the partnership is effective to encumber the partner's individual property. In two of these cases, *F.P. Baugh, Inc. v. Little Lake Lumber Co.,* 297 F.2d 692 (9th Cir.1961), and *Underwood v. United States,* 118 F.2d 760 (5th Cir.1941), the notice was actually indexed under the name of the partner whose property the IRS sought to encumber as well as under the partnership name. The record is not entirely clear, but it appears that the IRS also filed notices under the names of the individual partners in *United States v. Ross,* 176 F.Supp. 932 (D.Neb.1959). The opinions in the remaining cases, with the exception of *American Surety Co. of New York v. Sundberg,* 363 P.2d 99 (Wash.1961), are silent on the issue of the indexing of the notice and clearly do not support the proposition for which they have been cited by the United States.

In *Sundberg,* the plaintiff surety company was the holder of several notes signed by Oscar Sundberg, Carl Sundberg, and Thor Sundberg, who did business as a partnership known as Oscar Sundberg and Sons. The notes held by the surety company were secured by mortgages against the individual property of the partners. A priority dispute developed with IRS, which had filed its notice of federal tax lien under the name "Oscar Sundberg and Sons," after the recordation of the various mortgages. The IRS contended that the mortgages securing the notes held by the surety company were not effective to secure nonobligatory future advances made by the surety company subsequent to the filing of the notice of the federal tax lien. The surety company argued that the notice of tax lien for unpaid employment and withholding taxes of the partnership was not effective as against the individual property of the partners. The Washington Supreme Court held that the notice filed under the partnership name was sufficient notice to those dealing with either Carl Sundberg or Thor Sundberg that IRS claimed a lien against their individual property.

The court notes that it is not bound by the decision in *Sundberg.* The court further notes that Sundberg is a fairly uncommon name. Also, the probability that the notice filed under the name "Oscar Sundberg and Sons" would alert a party to the existence of a lien against the property of either Carl or Thor Sundberg, the sons of Oscar Sundberg, is much greater than the probability that a party searching the records under the name "R.K. Walker" would discover a lien indexed under the name "LaForce-Walker Construction Co."

The interest of parties, if any, who relied upon the record and did business with Walker, individually, after May 17, 1978, would be prejudiced if the court adopted the proposition advocated by IRS. This court declines to hold that a notice of a federal tax lien filed against a partnership and indexed under the partnership name is sufficient to perfect a lien against the property of an individual partner, absent the circumstance of a partnership name which is so similar to the name of an individual partner that a reasonable search would disclose the notice. Since there is no evidence in the record that the notice filed on May 17, 1978, was indexed under the name "R.K. Walker," the IRS did not perfect its lien for the November 28, 1977, assessment in the amount of $2,325.49 when the May 17, 1978, notice was filed.[9]

9. The procedure for the filing of federal tax liens in Tennessee is codified at Tenn.Code Ann. § 66–21–201 *et seq.* (1982). Tenn.Code Ann. § 66–21–202(a) (1982) provides in apposite part: "When a notice of such tax lien is filed, the register shall forthwith enter the same ... showing on one (1) line the name and residence of the taxpayer named in such notice ...."

The register arguably should have filed the notice under the name Robert Walker since his name was typed in the "Name of Taxpayer" block in the notice form along with the name Kermit LaForce and the partnership name (i.e.

Acoustics and Warren Brothers further contend that the IRS claim only has priority against their claims to the extent of $15,864.07. This amount is the total of the principal amounts shown as unpaid in the four notices of federal tax liens which are unchallenged. Acceptance of the position urged by Acoustics and Warren Brothers would deny the right of IRS to interest on the unpaid taxes to which it is clearly entitled by virtue of 26 U.S.C.A. § 6601(a) (Supp.1982).[10]

The IRS is entitled to a second priority against the judgment proceeds in issue subject only to the claims of Whelchel and Cate and the allowance to Robby's of a reasonable attorney fee and costs. The amount of the IRS claim having priority as against the remaining claimants is the amount due under the notices of federal tax lien filed on December 1, 1977, January 24, 1978, March 10, 1978, and August 7, 1978, plus statutory interest and penalty as provided by federal law.

■ As previously stated, two notices of levy were served by IRS upon Robby's on June 2, 1981. One of the notices involved unpaid taxes of the LaForce-Walker partnership for which an assessment had been made on November 28, 1977. This assessment was the same assessment for which the notice of federal tax lien was filed on May 17, 1978. The amount of this claim inclusive of interest and penalties, was $3,386.14 as of June 30, 1981. Since R.K. Walker is liable for the payment of this tax against the partnership, a lien arose against his property as of the date of the assessment. 26 U.S.C.A. §§ 6321, 6322 (1967). That lien extends to the after-acquired property of the taxpayer. *Seaboard Surety Co. v. United States*, 306 F.2d 855 (9th Cir.1962). It also attaches to a chose in action. *Texas Western Financial Corp. v. McCraw Candies, Inc.*, 347 F.Supp. 445 (N.D.Tex.1972). However, the federal tax lien for the November 28, 1977, assessment was not perfected as against the parties protected by provisions of 26 U.S.C.A. § 6323(a) (1967) since the May 17, 1978, Notice of Federal Tax Lien was not properly filed or indexed.

26 U.S.C.A. § 6331(a) (1967), *Levy and distraint*, enacts in apposite part:

> *Authority of Secretary or delegate.*—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

■ A chose in action is subject to levy to satisfy a federal tax lien. *United States v. Metropolitan Life Ins. Co.*, 130 F.2d 149 (2d Cir.1942). It has been held that the failure to file a notice of a federal tax lien will not affect the rights of the United States under a levy and notice in a contest with a trustee in bankruptcy. *United States v. Eiland*, 223 F.2d 118 (4th Cir.1955). The levy is an alternative means of perfecting a federal tax lien in the Sixth Circuit. *In re Brewster-Raymond Co.*, 344 F.2d 903,

LaForce-Walker Construction Co.). However, the only address given in the "Residence" block of the May 17, 1978, notice is a Post Office Box. The residential addresses of LaForce and Walker should have been given as well if IRS expected the register to index the notice under the names of the individual partners. Better yet, IRS could have prepared separate notices to be indexed under the partnership name and the names of the individual partners and avoided any confusion whatsoever.

The court further observes that the noting for registration on the books of the register of the instruments mentioned in Tenn.Code Ann. § 66–24–101 (1982) is "notice to all the world from the time they are noted for registration ...." Tenn.Code Ann. § 66–26–102 (1982). A federal tax lien is not among the instruments mentioned in Tenn.Code Ann. § 66–24–101 (1982). Thus, the noting of a federal tax lien for registration without a proper indexing thereof is not necessarily notice to the world of the filing of the notice of the federal tax lien.

10. *"General rule*—If any amount of tax imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at an annual rate established under Section 6621 shall be paid for the period from such last date to the date paid."

.909–10 (6th Cir.1965). *Contra United States v. Jenison,* 484 F.Supp. 747 (D.R.I. 1980).

The June 2, 1981, notice of levy perfected the tax lien which IRS had previously failed to perfect when it filed the May 17, 1978, notice. The amount of this lien inclusive of interest and penalties was $3,386.14 as of June 30, 1981.

### C.

### CLAIMS OF ACOUSTICS, UNIVERSAL MODULAR, MIZELL BROTHERS, AND POWELL–NEWMAN

*Acoustics, Inc.* obtained a judgment in the amount of $11,137.18 against R.K. Walker, d/b/a Walker Construction Company, on April 17, 1978, in the Knox County Chancery Court. A garnishment pursuant to this judgment was issued on October 23, 1978, and served on Robby's agent on October 25, 1978. An answer to the garnishment, wherein it was stated that a judgment against Robby's and in favor of R.K. Walker had been entered on October 31, 1978, by the Knox County Circuit Court, was filed by Robby's on November 6, 1978. After a series of hearings on the Acoustics garnishment action, the Knox County Chancery Court entered an Order on Garnishment on May 17, 1979. This order provides that Acoustics is entitled to a garnishment lien, effective October 25, 1978, against the October 31, 1978, circuit court judgment in Walker's breach of contract action against

Robby's. The order further provides that enforcement of the garnishment lien will be stayed until any appeal of the Walker suit against Robby's has been finally decided.

Acoustics contends that it had a perfected garnishment lien, as of October 25, 1978, against the chose in action of R.K. Walker against Robby's, which culminated in the entry of a judgment in favor of Walker on February 4, 1981. The contention of Acoustics is based on the following statutes:

*Definitions.*—As used in this part: "Property, debts, and effects" include . . . choses in action, whether due or not, and judgments before a court . . . . Tenn. Code Ann. § 26–2–201 (1980).

*Property, debts and effects liable to satisfy judgment.*—All property, debts and effects of the defendant in the possession of the garnishee, or under his control, shall be liable to satisfy the plaintiff's judgment, from the service of the notice, or from the time they came to his hands, if acquired subsequent to the service of notice, and before judgment. Tenn.Code Ann. § 26–2–202 (1980).

*Execution stayed until choses in action become due.*—Execution of the garnishment judgment may be stayed until the choses in action fall due . . . . Tenn.Code Ann. § 26–2–211 (1980).

The court concludes that Acoustics, Inc. is entitled to a garnishment lien against the Walker judgment as of October 25, 1978.[11]

---

11. Warren Brothers Company, Inc. and Standard Glass and Supply Company insist that it was incumbent upon Acoustics to comply with Tenn.Code Ann. § 25–5–103 (1980) in order to perfect its lien. That statute provides that an execution on a judgment does not "bind the (judgment) debtor's legal or equitable interest in . . . choses in action . . . not liable at law" unless an abstract or memorandum of the judgment is registered within 60 days from the rendition of the judgment. Since the term "property," found in Tenn.Code Ann. § 26–2–202 (1980) and its two immediate predecessors (Tenn.Code Ann. § 26–231 (Supp.1979) and Tenn.Code Ann. § 26–505 (1955)) is defined to include a chose in action, Walker's chose in action was "liable at law." A chose in action which is liable at law to execution to satisfy a judgment is outside of the registration requirement of Tenn.Code Ann. § 25–5–103 (1980).

*Smith v. United States Fire Ins. Co.,* 126 Tenn. 435, 150 S.W. 97 (1912). It was not incumbent upon Acoustics to comply with Tenn.Code Ann. § 25–5–103 (1980) as a predicate to perfection of its garnishment lien.

The unreported opinion of *Pioneer Credit Company v. The Ohio Casualty Group of Ins. Companies,* (W.S.Tenn.Ct.App. Sept. 4, 1981), cited by Standard Glass and Warren Brothers, holds that a judgment creditor must comply with Tenn.Code Ann. § 25–5–103 (1980) in order to perfect an *execution* lien against a chose in action. The holding does not impose that obligation upon a judgment creditor who attempts to enforce his judgment by garnishment. The garnishment levy of the judgment creditor in *Pioneer Credit* was unsuccessful because the object of the garnishment had been

*Mizell Brothers Company* obtained a judgment in the amount of $971.38, on February 22, 1977, against R.K. Walker, in the Knox County General Sessions Court. An application for execution was filed, and an execution was issued on November 9, 1978, by the general sessions court. Pursuant to the application for execution, a garnishment was served on Robby's on the same date. Mizell Brothers sought to garnish the judgment debt of Robby's to Walker created by the October 31, 1978, judgment. The judgment indebtedness of Walker to Mizell had increased to $1,060.49 at the time of the garnishment. An answer to the Mizell garnishment action was not timely filed on behalf of Robby's. However, after a hearing on January 3, 1979, the matter was held in abeyance pending the outcome of Robby's appeal of the October 31, 1978, judgment in favor of Walker.

The court concludes that Mizell Brothers holds a perfected garnishment lien against the Walker judgment as of November 9, 1978.

*Universal Modular Industries, Inc.,* (and James L. Clayton, Trustee) as cross-plaintiff in an action commenced in the Union County Chancery Court by CT Construction Company, obtained judgment in the amount of $6,957.00 against R.K. Walker on April 19, 1978. An application for execution was mailed on behalf of Universal Modular to the Chancery Court for Union County on or about November 6, 1978. The execution was issued on November 8, 1978. The unpaid balance on the aforementioned judgment was $2,868.21 on or about the date execution was issued.

The object of the application for execution by Universal Modular was to garnish an indebtedness of Robby's to R.K. Walker, which was evidenced by the October 31, 1978, Knox County Circuit Court judgment against Robby's. A garnishment notice was served on Robby's on November 28, 1978. Robby's filed an answer and stated that an appeal of the October 31, 1978, judgment for Walker had been prayed for by Robby's. After a hearing in the Union County Chan-

cery Court on December 19, 1978, an order was entered retaining jurisdiction of the garnishment action until the exhaustion of Robby's appeal rights and a final determination made regarding the rights of the parties in Walker's cause of action against Robby's. Further proceedings on the garnishment by Universal Modular were stayed until such time.

The court concludes that Universal Modular perfected a lien against the Walker judgment as of November 28, 1978, the date the garnishment notice was served upon Robby's.

The fifth defendant asserting a garnishment lien against the contested judgment proceeds is *Powell-Newman, Inc.* The Knox County Circuit Court entered an Order on August 27, 1980, which awarded judgment against R.K. Walker in the amount of $9,948.05, plus costs, to Powell-Newman, Inc. An application for garnishment was filed on June 16, 1981, in the Knox County Circuit Court by Powell-Newman, Inc. Pursuant thereto, garnishment was served upon Robby's agent on July 8, 1981. No portion of the judgment held by Powell-Newman, Inc. against Walker has been paid.

The court concludes that Powell-Newman, Inc., holds a garnishment lien as of July 8, 1981, against the judgment proceeds controverted herein.

### D.

### CLAIMS OF WARREN BROTHERS AND STANDARD GLASS

*Warren Brothers Company, Inc.* intervened in the breach of contract action filed by Walker against Robby's on December 20, 1977, asserting a claim against Walker. The trial of that action was concluded on September 15, 1978, and judgment was entered, as previously noted, on October 31, 1978, in favor of Walker and against Robby's. That same judgment provided that Warren Brothers was entitled to judgment in the amount of $15,720.00 against R.K.

transferred by the garnishee to the debtor prior   to the service of the garnishment.

Walker, "with a lien to be impressed upon the proceeds of the judgment of R.K. Walker d/b/a Walker Construction Company v. Robby's Pancake House of Florida, for satisfaction of interventer's [sic] judgment." The Walker judgment was appealed by Robby's, and the case was remanded for redetermination of the appropriate amount of damages. Ultimately, judgment against Robby's and in favor of Walker in the amount of $91,537.60 was entered on February 4, 1981. Under one of the provisions of this judgment, Warren Brothers also received judgment against R.K. Walker for the amount of $21,254.29. (This amount consisted of the October 31, 1978, judgment amount of $15,720.00 plus interest thereon to February 4, 1981.) This judgment contains language concerning the impression of a lien upon the proceeds of Walker's judgment which is nearly identical to that included in the October 31, 1978, judgment quoted above.

Warren Brothers adopts the position that its lien of judgment dates from September 15, 1978, the final day of the trial of the Walker case in which it had intervened, and, if not, then not later than October 31, 1978, the date of entry of the judgment in the first trial. Warren Brothers also alleges that it was prevented from issuing execution upon its judgment or otherwise attempting to enforce its judgment by orders of the Knox County Chancery Court issued in conjunction with the declaratory judgment action commenced by Robby's on June 25, 1981. It is the position of Warren Brothers that its claim is entitled to priority against all parties with the exception of Ward S. Whelchel, H. David Cate, and IRS to the extent of $15,864.07.[12]

■ The contention of Warren Brothers that its judgment lien dates from Septem-

ber 15, 1978, is not well taken. No judgment lien could have arisen until the entry of a written judgment. *Sparkle Laundry & Cleaners, Inc. v. Kelton,* 595 S.W.2d 88, 93 (Tenn.Ct.App.1979), *cert. denied.* Consequently, Warren Brothers could not possibly have a lien against either Walker's chose in action or his judgment against Robby's until October 31, 1978.

■ Perhaps Warren Brothers thought that its interest was perfected by the inclusion in the October 31, 1978, judgment of language which explicitly provided that Warren Brothers was entitled to an impression of a lien upon the proceeds of the judgment of Walker against Robby's. In any event, no attempt to enforce its judgment by either execution or garnishment was undertaken by Warren Brothers.[13] The mere entry of the judgment without some supplemental action could not, and did not, perfect a lien in favor of Warren Brothers as against third parties. The lien of judgment in favor of Warren Brothers is perfected only as against the interests of Robby's and Walker, each of whom was a party to the judgment wherein Warren Brothers was awarded a lien.

*Standard Glass and Supply Company* recovered two separate judgments in the respective amounts of $2,487.21 and $5,000.00, against R.K. Walker in the General Sessions Court of Knox County on December 18, 1978. Standard Glass was also awarded a third judgment, in the amount of $7,446.16, against Walker by virtue of a Knox County Chancery Court judgment dated December 27, 1978. On February 5, 1979, Walker and Standard Glass entered into an agreement whereby Walker assigned his interest to the extent of $11,000.00, in the October 31, 1978, judgment against Robby's to Stan-

---

12. Warren Brothers challenges the validity of the notice of tax lien filed on May 17, 1978, identifying the taxpayer as LaForce-Walker Construction Co. This is the same notice challenged by Acoustics.

13. Warren Brothers has contended that it was barred from enforcing its judgment by orders of the Knox County Chancery Court entered in connection with the instant declaratory action,

commenced on June 25, 1981, and by the commencement of bankruptcy proceedings by Robby's on August 24, 1981. However, nothing in the record suggests that Warren Brothers was prohibited from obtaining a garnishment lien between October 31, 1978, when judgment was entered in its favor against Walker, and June 25, 1981.

dard Glass. In consideration of the assignment, Standard Glass agreed:

> [T]o refrain from issuing execution against the property and effects of assignor and [Standard Glass] hereby releases assignor from the indebtedness recited hereinabove and declares the same to be fully discharged. Assignee acknowledges that Robby's Pancake House of Florida, Inc. has perfected an appeal of the judgment recited herein but assignee agrees to look solely to Robby's ... for payment and satisfaction of the indebtedness from and after the date of this assignment.[14]

The judgments held by Standard Glass against Walker are not recited in the assignment. The only reference to the indebtedness of Walker to Standard Glass mentioned in the assignment prior to the quoted language is: "Whereas, assignor is justly indebted to assignee for certain sums of money" and "Whereas, assignor desires to discharge all indebtedness due assignee."

An attorney for Standard Glass notified Robby's attorney in the Walker suit against Robby's of the assignment by letter dated February 13, 1979. Thereafter, Standard Glass moved to intervene in the second trial of Walker's action against Robby's. Intervention was denied on the basis that the interest of Standard Glass was adequately protected by virtue of the February 5, 1979, assignment from Walker. An order denying intervention was entered by the circuit court judge on October 2, 1979.

A chose in action, absent a statutory prohibition, is assignable. *Kivett v. Mayes,* 49 Tenn.App. 272, 354 S.W.2d 492 (1961), *cert. denied.* The assignment of a chose in action is not within the registration laws. *See* Tenn.Code Ann. § 66–24–101 (1982) and Tenn.Code Ann. § 47–9–104

(1979). However, a debtor must be notified of an assignment prior to service upon the debtor of an attachment or garnishment to entitle the assignee to priority vis-a-vis the attaching creditor. *Moran v. Adkerson,* 168 Tenn. 372, 79 S.W.2d 44 (1935); *Rodes v. Haynes,* 95 Tenn. 673, 33 S.W. 564 (1895); *Clodfelter v. Cox,* 33 Tenn. (1 Sneed) 330 (1853); *Union Livestock Yards, Inc. v. Merrill Lynch,* 552 S.W.2d 392 (Tenn.Ct.App. 1976), *cert. denied.*

The court concludes that Standard Glass is entitled to priority from the date it gave notice to Robby's (i.e., February 13, 1979).

### E.

### CLAIM OF DAVID AND BARBARA SHELEY

*David and Barbara Sheley* initially contended they were entitled to be subrogated to a portion of the assignment held by Standard Glass. The court has been advised by counsel that the parties have agreed on the respective rights of the parties to any funds received by Standard Glass under its assignment.

### F.

### CLAIM OF R.K. WALKER, JIM LIFFORD LUMBER AND VIKING EQUIPMENT

*R.K. Walker,* d/b/a Walker Construction Company has filed an answer admitting the interests of the various claimants as alleged by Robby's in the complaint filed on June 25, 1981. He seeks only any surplus after payment of valid claims.

*Jim Lifford Lumber Company* and *Viking Equipment Company* failed to file answers and are in default.

### IV.

The following chart reflects the rank of the claimants whose interest is perfected against the judgment proceeds:

---

14. The appeal by Robby's of the October 31, 1978, judgment involved a challenge of the method which the trial court had employed to compute the damages to which Walker was entitled as opposed to the existence of liability, according to counsel for Walker. That being the case, the court is satisfied that Walker and

Standard Glass intended that the February 5, 1979, assignment to Standard would encompass the underlying chose in action of Walker against Robby's, to the extent of $11,000.00, and not merely the October 31, 1978, judgment which was subject to modification on appeal.

| CLAIMANT | DATE OF PRIORITY | AMOUNT |
|---|---|---|
| (1) Robby's Pancake House | —— | $ 750.00 |
| (2) Ward S. Whelchel | —— | $ 39,293.78 plus interest from November 20, 1981 |
| (3) H. David Cate | —— | $ 5,000.00 plus interest from February 4, 1981 |
| (4) Internal Revenue Service | Dec. 1, 1977 [15] | $ 8,336.07 plus interest and penalties |
| | Jan. 24, 1978 | $ 3,457.58 plus interest and penalties |
| | March 10, 1978 | $ 1,749.30 plus interest and penalties |
| | August 7, 1978 | $ 2,321.12 plus interest and penalties |
| (5) Acoustics | October 25, 1978 | $ 11,137.18 plus interest [16] |
| (6) Mizell Brothers | November 9, 1978 | $ 1,060.49 plus interest |
| (7) Universal Modular | November 28, 1978 | $ 2,868.21 plus interest |
| (8) Standard Glass | February 13, 1979 | $ 11,000.00 |
| (9) Internal Revenue Service | June 2, 1981 | $ 3,386.14 plus interest and penalties since June 30, 1981 |
| (10) Powell–Newman | July 8, 1981 | $ 9,948.05 plus interest |

15. The United States conceded the priority of the claims of Whelchel and Cate. The IRS lien based on the December 1, 1977, Notice of Federal Tax Lien does not outrank Whelchel's claim despite the fact that the federal lien predates the claim of an attorney's lien. 26 U.S.C.A. § 6323(b)(8) (1967).

16. Robby's has conceded that it is obligated to pay interest on the Walker judgment at the appropriate legal rate. The question has been raised whether the garnishment lien creditors are entitled to post-garnishment interest. A garnishee who has had the benefit of the use of money attached in his hands is liable for interest from the date of attachment. *Mattingly v. Boyd,* 61 U.S. (20 How.) 128, 15 L.Ed. 845 (1858). Despite the certainty of liability to Walker for a period of approximately four years—the appeal of the October 31, 1978, judgment related to the method of computation of damages, not to the existence of liability— Robby's has not made any payment to either Walker or any of his creditors involved herein. Robby's has enjoyed the benefit of not having to pay the garnishment lien creditors. It would be inequitable to deny post-garnishment interest to the perfected garnishment lien creditors under the circumstances. This is particularly true since interest is accruing on the judgment. The garnishment of a savings deposit of a depositor who is entitled to interest on his deposit attaches to the interest as well as to the principal. *Savings Bank of Danbury v. Loewe,* 242 U.S. 357, 37 S.Ct. 172, 61 L.Ed. 360 (1917). The judgment fund in the instant case is analogous to a savings deposit on which interest is accruing.

This Memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.