Doris W. HENSLEY, Administratrix of the Estate of Dion Hensley, Charles Hensley, and Mona Hensley, Plaintiffs–Appellants,

v.

Terry HARBIN, Barclay's American Mortgage Corporation, Midland Mortgage Company, Jim L. Harbin and Faye Harbin, and the United States of America, Defendants–Appellees.

No. 98–6369.

United States Court of Appeals, Sixth Circuit.

Submitted: Sept. 17, 1999

Decided and Filed: Nov. 9, 1999

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 21, 1999.

J. Mikel Dixon (briefed), Knoxville, TN, for Plaintiffs–Appellants.

Wade M. Boswell, Knoxville, TN, for Terry Harbin, Barclay's American Mortgage Corp., Jim L. Harbin and Faye Harbin.

W. Tyler Chastain, Bernstein, Stair & McAdams, Knoxville, TN, for Midland Mortgage Co.

David English Carmack (briefed), Robert L. Baker (briefed), U.S. Department Of Justice, Appellate Section Tax Division, Washington, D.C., for United States.

Before: BATCHELDER and GILMAN, Circuit Judges; HOOD, District Judge.*

* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

GILMAN, Circuit Judge.

This appeal involves the sole issue of when a judgment lien is perfected under federal law. Two of Dion Hensley's relatives and the administrator of his estate (collectively "the Hensleys") won a $780,000 judgment in state court against Terry Harbin in 1988, and attached his property to satisfy the award. On appeal, the judgment was reversed and remanded as to the issue of damages only. The parties eventually reached a settlement in 1992, and a new judgment was entered for $400,000. In 1990, however, after the monetary award in the first judgment was set aside but before the settlement and entry of the final judgment, the United States filed a $19,805.38 tax lien against Harbin's property. In the present action, the Hensleys bring suit against Harbin and the United States, as well as several of Harbin's other creditors, to establish the priority of the Hensleys' judgment lien and to force the foreclosure of Harbin's property.

The question presented on appeal is whether the Hensleys' judgment lien became perfected when the lien was first entered in 1988 or only when its amount was ultimately fixed in 1992. For the reasons set forth below, we **AFFIRM** the judgment of the district court that the Hensleys' lien was not perfected until 1992.

## I. BACKGROUND

### A. Factual background

The facts in this appeal are undisputed. Harbin owns a piece of real property located at 7325 Oxmore Road, in Knox County, Tennessee. The property is subject to several liens. The first such lien is a deed of trust, issued on June 11, 1985, which was secured by a first mortgage in favor of Barclay's American Mortgage Corporation ("Barclay's"). Barclay's has since transferred this lien to Midland Mortgage Company ("Midland").

On April 8, 1988, the Hensleys won a $780,000 civil judgment against Harbin for the wrongful death of Dion Hensley. The Hensleys filed the judgment as a lien in the Register's Office of Knox County, Tennessee on April 19, 1988. Harbin appealed. On July 26, 1989, the Tennessee Court of Appeals reversed and remanded solely for the purpose of redetermining the amount of damages. Approximately three years later, the parties agreed to settle the case for $400,000, and the trial court entered judgment in that amount on June 3, 1992. The Hensleys filed this new judgment as a lien on June 10, 1992.

In the time between the entry of the first and second judgment liens, two additional liens were filed against the property. The first was filed on July 14, 1988, evidencing a second mortgage in the amount of $12,500 that Harbin had executed in favor of his parents. The second was filed on December 31, 1990, based on an assessment by the Internal Revenue Service of $19,805.38 in unpaid taxes owed by Harbin.

### B. Procedural background

The Hensleys brought this action against Harbin and his other creditors in the Chancery Court of Tennessee at Knoxville on January 9, 1997 to enforce the Hensleys' judgment lien. They sought a declaration of the priority of their lien over all liens other than the 1985 mortgage, and requested that the court authorize the foreclosure of Harbin's property. Midland was subsequently joined as a defendant when the Hensleys discovered that it was the current holder of the mortgage once held by Barclay's. The United States removed the action to federal court pursuant to 28 U.S.C. §§ 1444, 1446, and 2410.

The Hensleys then moved for judgment on the pleadings. As part of its response, the United States filed a motion for partial summary judgment, requesting that its lien be declared superior to that of the Hensleys. Midland filed an unopposed motion for partial judgment on the pleadings, seeking a declaration that its 1985

mortgage lien was superior to all of the liens involved. On September 9, 1998, the district court granted the motions of Midland and the United States and denied the Hensleys' motion, holding that the Hensleys' judgment lien was not perfected until after the federal tax lien was recorded. Having resolved the priority of the federal lien, the court remanded the issue of the remaining lien priorities to the state chancery court, pursuant to 28 U.S.C. § 1441(c). The Hensleys filed a timely appeal on October 9, 1998, challenging the award of partial summary judgment in favor of the United States.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### B. The district court properly concluded that the federal tax lien has priority over the Hensleys' judgment lien

■ Where a federal tax lien is involved, the relative priority of competing liens is governed by federal law. *See United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963) ("[I]t is a matter of federal law when such a [state] lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien."). In adjudicating the priority of such competing liens, federal common law prescribes that "the first in time is the first in right." *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954). "First" is defined as "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.* at 84, 74 S.Ct. 367; *see also* Treas. Reg. § 301.6323(h)–1(g) (1976).

■ The facts of *United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523 (6th Cir.1995), are comparable to those of the instant case. Dishman brought suit in state court against several debtors who allegedly owed Dishman money from a sale of petroleum products. While pursuing the suit, Dishman secured a prejudgment attachment lien against the debtors' property. Before the case was resolved, however, the IRS assessed the debtors for unpaid taxes and filed a tax lien against the same property. Dishman subsequently prevailed in its case, and was awarded a judgment. The IRS intervened in the case to establish the priority of its lien. On appeal, this court held for the IRS, reasoning that "at the time the federal tax lien was filed, both the property subject to Dishman's attachment lien and its amount remained uncertain." *Id.* at 527. The court based its opinion on the parallel case of *United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), in which the Supreme Court gave priority to a federal tax lien recorded after the filing of a prejudgment attachment lien but prior to judgment.

Also on point are a pair of Supreme Court cases that adjudicated the priority

of a federal tax lien as compared with a mortgagee's claim for attorney's fees. *See United States v. Equitable Life Assurance Soc'y*, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). In both Equitable Life and Pioneer, a borrower defaulted and the mortgagee brought suit to foreclose on the mortgage and to recover attorney's fees. Federal tax liens were filed after the borrower's default but prior to the court's entry of a foreclosure decree, which fixed the amount of the attorney's fees. The Supreme Court granted priority in both cases to the tax lien, holding that, although the identity of the lienholder and the property subject to the lien were known at the time of the borrower's default, "the amount of the lien for attorney's fees was undetermined and indefinite when the federal tax liens in question were filed." *Pioneer*, 374 U.S. at 90, 83 S.Ct. 1651; *see also Equitable Life*, 384 U.S. at 328, 86 S.Ct. 1561.

In sum, although we have found no case that has considered the priority of a judgment lien where an appellate court has set aside the award of damages and remanded, there appears to be no logical basis for distinguishing the instant case from the above precedents which provide that a lien of an undetermined amount is inchoate until its amount is fixed.

### C. The Hensleys offer no persuasive grounds for reversal

The Hensleys have presented several arguments on appeal, all of which we find unpersuasive. First, they claim that the amount of the ultimate judgment after remand could only have been lower than the original judgment. From this premise, they argue that they could have relied upon the original lien to collect the amount of any judgment that resulted, crediting any difference to Harbin. They claim that the second judgment lien was only filed out of "an abundance of caution ... but that [the second lien] was not necessary, under state law." This argument misses the mark. One of the three requirements

of a choate lien *under federal law* is that it establish a sum certain. *See Dishman*, 46 F.3d at 526. When the Hensleys' judgment award was reversed as to damages, it was no more a choate lien than the prejudgment attachment liens at issue in *Dishman* and *Acri*.

The Hensleys further contend that, under Tennessee law, the final judgment lien would relate back to the date of the original lien. *See Shepard v. Lanier*, 192 Tenn. 608, 241 S.W.2d 587 (1951). The priority of a federal tax lien, however, is governed by federal law. *See, e.g.*, Acri, 348 U.S. at 213, 75 S.Ct. 239 ("[T]he fact that the Ohio courts had designated an attachment lien 'an execution in advance,' and treated it as a perfected lien at the time of attachment, does not bind this Court." (citation omitted)).

Next, the Hensleys suggest that if any variation in a lien's amount disturbs its priority, then partial satisfaction of a lien or interest payments added to a lien would render many liens inchoate. The United States correctly responds, however, that although the total balance of a lien may fluctuate in such cases, the underlying amount is fixed. In the present case, the underlying amount of the judgment was not determined until 1992, well after the federal tax lien was filed.

Finally, the Hensleys argue as a matter of policy that if a judgment lien is rendered inchoate by the possibility of future reversal or remittitur, then no judgment lien could ever be considered choate. This argument overlooks the fact that the priority of the Hensleys' original lien was not disturbed by Harbin's appeal—it became inchoate only when the judgment was actually reversed.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.