In the Matter of the ESTATE OF
Larry J. HARLESS, Deceased

Maurine K. Harless, Administratrix
of the Estate of Larry J.
Harless, Petitioner,

v.

United States of America, Respondent.

No. CIV. A. 98–1072–RV–S.

United States District Court,
S.D. Alabama,
Southern Division.

May 23, 2000.

William T. McGowin, IV, Mobile, AL, for Larry J. Harless.

Bradley R. Byrne, Mobile, AL, William T. McGowin, IV, McRight, Jackson, Myrick & Moore, LLC, Mobile, AL, for Maurine K. Harless.

William R. Sawyer, U.S. Atty. Office, Mobile, AL, Christopher M. Pietruszkiewicz, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER

VOLLMER, District Judge.

This matter comes before the court on cross-motions for summary judgment by petitioner Maurine Harless, as administratrix of the estate of Larry J. Harless, and respondent United States as to whether a divorce judgment recorded in 1992 takes priority over a federal tax lien filed in 1996. After carefully reviewing the law and considering the submissions of the parties,[1] the court concludes that Ms. Harless, acting in her individual capacity, perfected her lien under the divorce judgment before the government filed notice of its federal tax lien. The court will therefore grant Ms. Harless's motion and deny the government's motion.

## I. BACKGROUND

The facts are not in dispute. On August 27, 1991, the Circuit Court of Mobile County, Alabama, entered a judgment of divorce dissolving the marriage of Larry and Maurine Harless. Pursuant to the divorce judgment, Mr. Harless was required to make three $1,000,000.00 payments in January 1992, January 1993 and January 1994 into a trust for the benefit of Ms. Harless. In January 1992, Mr. Harless made his first and only payment into the trust. On February 13, 1992, he recorded a quit claim deed in the Mobile County Probate Records for two parcels of real property he purchased on Springhill Avenue in Mobile, Alabama (the "Springhill Property"). On July 15, 1992, Ms. Harless recorded a certified copy of the divorce judgment in the Mobile County Probate Records.

On August 3, 1992, the Internal Revenue Service ("IRS") made an assessment against Mr. Harless for outstanding tax liabilities in the amount of $81,110.40. The IRS made subsequent assessments against Mr. Harless on September 26, 1994, for $3,445,522.00, and on February 5, 1996, for $1,360.47.

In 1995, Mr. Harless died. He had not paid the 1993 or 1994 alimony installments, nor had he satisfied his delinquent tax liabilities. Thus, at the time of his death, Mr. Harless owed at least $2,000,000.00 in alimony to Ms. Harless and more than $3,500,000.00 in income taxes to the United States.

---

1. The court has considered the record as a whole, including the United States' motion for summary judgment (Doc. 7) and supporting brief (Doc. 8); Ms. Harless's motion for summary judgment (Docs.10) and supporting brief (Doc. 11); and the reply briefs of the United States (Doc. 15) and Ms. Harless (Doc. 16).

On August 20, 1996, the IRS filed a notice of federal tax lien in the Mobile County Probate Records for the outstanding tax liabilities of Mr. Harless in the amount of $3,527,993.62, plus accruals as provided by law.

On July 10, 1998, Ms. Harless was appointed administratrix of the estate of Mr. Harless. On October 8, 1998, Ms. Harless, acting in her capacity as administratrix, filed a "Petition to Determine the Priority of Lien (Quiet Title) and to Convey Property in Satisfaction of Lien" in the Probate Court of Mobile County. Through this petition, Ms. Harless alleged that the judgment lien she filed in her individual capacity against the Springhill Property had priority over the government's subsequently-filed tax lien. Ms. Harless also asserted that the Springhill Property was the only asset in the Estate's possession and that there were no other assets with which to pay the upkeep, taxes and insurance premiums on the property. According to Ms. Harless, then, it would be in the Estate's best interests for the probate court to confirm that her individual judgment lien takes priority over the government's tax lien and to vest title to the Springhill Property (which was valued at less than either lien) in Ms. Harless in her individual capacity.

On October 28, 1998, the United States removed Ms. Harless's quiet title petition pursuant to 28 U.S.C. § 1444.[2] Thereafter, the parties filed cross-motions for summary judgment as to which lien has priority. During the pendency of those motions, the Springhill Property was sold for $309,469.07. The proceeds of the sale were then deposited into the registry of the court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In reviewing a summary judgment motion, the court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Alexander v. Fulton County,* 207 F.3d 1303, 1335 (11th Cir.2000).

The party seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the non-moving party must set forth specific facts which demonstrate that there is a genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To avoid an adverse ruling on a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading." Fed R. Civ. P. 56(e). Nor may the non-moving party defeat summary judgment by providing a mere "scintilla" of evidence. *See Burger King Corp. v. Weaver,* 169 F.3d 1310, 1321 (11th Cir.1999). Instead, there must be a genuine factual conflict in the evidence to support a jury question. *See Continental Cas. Co. v. Wendt,* 205 F.3d 1258, 1261 (11th Cir.2000).

## III. DISCUSSION

The sole question before the court is which lien has priority. Resolution of this

---

**2.** Section 1444 permits the United States to remove any state court action affecting property on which the United States has a lien.

issue is determinative of whether Ms. Harless, in her individual capacity, or the United States is entitled to the proceeds of the sale of the Springhill Property, as the Estate does not have sufficient funds to satisfy either lien. Ms. Harless asserts that the divorce judgment lien takes priority over the later-filed federal tax lien. The government counters that the prior recording of the divorce judgment did not create a choate (or "perfected") lien and that such "perfection"is necessary to obtain priority. To resolve this issue, the court has no choice but to confront "the tortured meanderings of federal tax lien law." *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1043 (5th Cir.1972).

### A.

The Internal Revenue Code provides for the imposition of a federal tax lien against all "property and rights to property" belonging to a taxpayer who, after assessment and demand, fails to pay taxes to the United States. 26 U.S.C. § 6321. Federal tax liens arise automatically upon assessment. *See* 26 U.S.C. § 6322. But, such liens are "not valid against any ... judgment lien creditor" until proper notice is filed. 26 U.S.C. § 6323(a). Moreover, in determining the priority of competing liens, courts apply the general principle that a lien "first in time is the first in right." *United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). Therefore, a federal tax lien has priority over a competing judgment lien only if the IRS serves notice of its lien before the judgment lien is perfected under state law. *See United States v. Estate of Romani*, 523 U.S. 517, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998).

### B.

Ms. Harless argues that the divorce judgment lien has priority over the federal tax lien because she properly recorded the divorce judgment before the government recorded its lien. Specifically, Ms. Harless contends that she, in her individual capacity, became a judgment lien creditor by recording the divorce judgment in the Mobile County Probate Records. A "judgment lien creditor" is a person who (1) has obtained a valid judgment (2) in a court of record and of competent jurisdiction (3) for the recovery of a certain sum of money; and (4) has perfected a lien under that judgment. *See* Treas. Reg. § 301.6323(h)–1(g). Thus, if Ms. Harless, in her individual capacity, satisfies all four requirements, then her divorce judgment lien takes priority over the subsequently-filed federal tax lien.

The government does not contest any of the first three elements. What the government does dispute is the fourth element, namely, that Ms. Harless, in her individual capacity, perfected a lien under the divorce judgment. To be perfected under federal law, a state-created judgment lien must establish: (1) the identity of the lienor; (2) the property subject to the lien; (3) and the amount of the lien. *See* Treas. Reg. § 301.6323(h)–1(g). In this case, the government takes the position that the judgment lien does not satisfy the second and third criteria.

### 1.

The court will first address the government's assertion that the judgment lien was not perfected "inasmuch as the property subject to the purported lien could not be identified because no lien existed under state law." According to the government, because the circuit court did not exercise its discretion to impose a lien on the Springhill Property in the divorce judgment, Ms. Harless could not subsequently place a lien on the property herself.

It is well established that an Alabama state court "may secure payment of alimony by declaring a lien on the husband's property." *Davis v. Davis*, 274 Ala. 277, 147 So.2d 828, 830 (1962) (citing *Phillips v. Phillips*, 221 Ala. 455, 129 So. 3 (1930); *Smith v. Rogers*, 215 Ala. 581, 112 So. 190 (1927)); *see also Gibbs v. Gibbs*, 653 So.2d 300, 301 (Ala.Civ.App.1994) (holding that

trial court's imposition of a judgment lien against husband's real property was not an abuse of discretion because "[o]ur courts have consistently upheld such liens to ensure that a spouse receives alimony"). The rationale behind this discretion is simple—by placing a lien on a spouse's real property directly in the judgment of divorce, the court can prevent any attempt by that spouse to become "judgment-proof" through the subsequent conveyance of his or her property.

However, simply because a state court has the authority to impose a lien on a spouse's real property does not mean that the other spouse cannot later obtain a lien whenever the court declines to exercise that discretion. Indeed, Alabama law expressly permits the "owner of *any* judgment entered in any court of this state" to record a certificate of that judgment with a county probate court. Ala.Code § 6–9–210 (1975) (emphasis added). Once that judgment has been recorded, it "creates a blanket lien on all of the property of the defendant that is located in the county of recordation and is subject to levy and sale." *Smith v. Arrow Transp. Co.*, 571 So.2d 1003, 1006 (Ala.1990) (citing Ala. Code § 6–9–211 (1975)). Thus, Ms. Harless, in her individual capacity, created a lien against all real property owned by Mr. Harless in Mobile County when she recorded the certified copy of the divorce judgment in the Mobile County Probate Records. *See Garrett v. Garrett*, 628 So.2d 659, 660 (Ala.Civ.App.1993) (holding that wife "did all that was required to obtain a lien on [her former husband's] property" when she filed with the probate court a certificate of a divorce judgment which did not impose a lien against the former husband's property). Accordingly, the government's contention that Alabama law precluded Ms. Harless from placing a lien on the Springhill Property is without merit.[3]

**2.**

The government also argues that Ms. Harless, in her individual capacity, did not perfect her lien because the recorded judgment does not establish the amount of the lien. Though acknowledging that the divorce judgment awarded a certain sum of alimony, *i.e.*, a $3,000,000.00 trust fund, the government contends that the amount of the lien itself was not established because the judgment does not identify which, if any, of the three $1,000,000.00 installments were outstanding at the time of recording.

This argument rests primarily upon the Alabama Supreme Court's decision in *Miles v. Gay*, 280 Ala. 131, 190 So.2d 686 (1965), which held that a recorded certificate of a judgment awarding a wife $10.00 per week for an indeterminate period was insufficient to attach a lien against the former husband's property. According to the *Miles* court, a lien for past-due alimony "does not arise automatically as to each installment as it becomes due, but arises only when the court has formally determined the total amount due and has reduced the delinquent payments to judgment." *Id.* at 694 (quoting *McClanahan v. Hawkins*, 90 Ariz. 139, 367 P.2d 196, 199 (1961)). The fact that the wife's certificate repeated the terms of the judgment was therefore insignificant: "It is no answer to say that the amount is $10.00 for each week." *Id.* at 693. Rather, in the words of the *Miles* court, "a lien for periodic installment payments can be acquired only by a judicial ascertainment and declaration of the amount of past-due installments and filing a proper certificate showing such a judgment or decree." *Id.*

Applying the rationale of *Miles* to this case, the government contends that Ms. Harless's recorded divorce judgment does not identify the past-due amounts of alimony due under that judgment and therefore did not perfect a lien against the Springhill Property. To properly perfect her lien,

---

**3.** Moreover, the government does not explain how the circuit court could possibly place a lien on the Springhill Property in the divorce

judgment, given that the property was acquired almost six months after judgment was entered.

the government argues, Ms. Harless should have reduced the past-due amounts to a money judgment and recorded that judgment with the probate office.

This position is not without some support. In *Dodd v. Lovett,* 282 Ala. 383, 211 So.2d 799, 802 (1968), the Alabama Supreme Court relied upon *Miles* to hold that a wife's claim for unpaid alimony installments ordered by a Georgia divorce decree could not be maintained against her deceased husband's estate unless the past-due amounts were first reduced to a money judgment in Alabama. Ten years later, the Alabama Supreme Court again invoked *Miles* to hold that past-due child support payments must be reduced to a money judgment before a claim could be brought against the deceased father's estate. *See Austin v. Austin,* 364 So.2d 301, 302–03 (Ala.1978).

The problem with the government's argument, however, is three-fold. First, as the government concedes, none of the installment payments were outstanding at the time Ms. Harless recorded her divorce judgment. Thus, there were no "past-due" alimony installments for Ms. Harless to reduce to a money judgment.

Second, the Alabama Supreme Court has since rejected the proposition that past-due alimony or child support installments are not final monied judgments as of the dates they become due. In *Ex Parte Morgan,* 440 So.2d 1069 (Ala.1983), the court held that a past-due installment of alimony or child support becomes a final monied judgment on the date of delinquency. *Id.* at 1072. Thus, the court concluded, it was unnecessary for a divorced mother to reduce past-due child support payments to a money judgment before she could begin garnishment proceedings against her former husband. *Id.* In making this determination, the *Morgan* court expressly declined to follow *Miles* and its progeny:

> [M]ust past due installments for child support under an Alabama court decree be reduced to a monied judgment before

garnishment proceedings can be instituted against the delinquent father? The answer to this question does not come from *Austin, Miles,* and *Dodd.* It comes from *Armstrong v. Green,* 260 Ala. 39, 68 So.2d 834 (1953), *O'Neal v. O'Neal,* 284 Ala. 661, 227 So.2d 430 (1969), and *Andrews v. City National Bank of Birmingham,* 349 So.2d 1 (Ala.1977).

> *Armstrong* established the rule that installment payments decreed in a divorce for support and education of the minor children of the marriage become final judgments as of the dates due and may be collected as other judgments. *O'Neal,* citing *Rochelle v. Rochelle,* 235 Ala. 526, 179 So. 825 (1938), held that a ·decree for child support is a fixed monied judgment, as to past due installments, which can only be discharged as any other such judgments. In *Andrews,* the court held that alimony is a debt which becomes a final money judgment as to past due installments. Thus, being a final judgment, the past due installments of alimony were subject to being attached by a writ of garnishment filed by a creditor of the divorced wife.

*Id.* at 1071. Accordingly, by holding that delinquent installments of court-ordered alimony or child support are final money judgments as of the dates due, the *Morgan* court "rejected the reasoning behind *Austin [v. Austin],* ... *Miles v. Gay,* ... and *Dodd v. Lovett.*" *Smith v. Estate of Baucom,* 682 So.2d 1065, 1066 (Ala.Civ.App. 1996). *Cf. Morgan,* 440 So.2d at 1073 (Maddox, J., dissenting) ("The majority does not expressly overrule *Austin v. Austin,* 364 So.2d 301 (Ala.1978), but the holding of the opinion has that effect."); *accord Schoonheim v. Epstein,* 123 A.D.2d 549, 506 N.Y.S.2d 713, 714 (1986) ("Although the *Morgan* court does not expressly overrule *Austin,* it distinguishes it so sharply as to deprive it of all precedential force."). For these reasons, this court declines to follow *Miles* here.

Finally, even if the court were to apply the principle of *Miles,* this case is factually

distinguishable. As the Alabama Supreme Court explained in *Morgan*, 440 So.2d at 1071, the court's primary concern in *Miles* was that the certificate of judgment, which simply repeated that the wife was entitled to alimony at the rate of $10.00 per week for an indefinite period of time, was for an uncertain amount. Because a lien is insufficient under Alabama law unless the certificate identifies the amount of the judgment,[4] it was necessary for the wife to reduce the delinquent alimony installments to a money judgment for a sum certain before she could proceed in her claim against her former husband's property. *Id.* Unlike *Miles*, uncertainty as to the amount of the judgment is not a factor in this case. There is no dispute that the trial court awarded Ms. Harless $3,000,-000.00 in alimony. The fact that this amount was payable in annual installments is therefore irrelevant because the divorce judgment itself is for a sum certain. Accordingly, the court rejects the government's argument that the recorded divorce judgment does not establish the amount of Ms. Harless's lien.[5]

## IV. CONCLUSION

Ms. Harless, in her individual capacity, meets all of the federal requirements of a judgment lien creditor. As such, her 1992 judgment lien against the Springhill Property has first-in-time priority over the competing 1996 federal tax lien. Thus, to the extent that the parties seek a determination of the priority of their competing liens, Ms. Harless's motion for summary judgment is **GRANTED** and the United States' motion for summary judgment is **DENIED**. Given that the Springhill Property was sold during the pendency of those motions, the issue of whether the property should be conveyed to Ms. Harless in her individual capacity is **MOOT**.

Accordingly, no sooner than eleven business days after the date of entry of judgment,[6] the **CLERK** is **DIRECTED** to prepare a check payable to "Maurine K. Harless, as Administratrix of the Estate of Larry J. Harless, Deceased" in the amount of $309,469.07. Unless otherwise ordered by the court, counsel for Ms. Harless shall then personally retrieve the check from the clerk of court for an appropriate distribution through probate proceedings.

The **CLERK** is further **DIRECTED** to send a copy of this memorandum opinion and order to the Clerk of the Probate Court of Mobile County.

## *JUDGMENT*

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, **FINAL JUDGMENT** is hereby entered in favor of petitioner Maurine K. Harless, in her capacity as administratrix of the Estate of Larry J.

---

**4.** *See* Ala.Code §§ 6–9–210, 6–9–211 (1975). The relevant portions of these statutes are virtually identical to sections 584, 585, Tit. 7, Ala.Code 1940, which were in effect at the time *Miles* was decided. *See* 190 So.2d at 687–88.

**5.** Admittedly, the certified copy of the divorce judgment does not specify the amount of court costs or attorneys' fees that were assessed against Mr. Harless, as required by Alabama Code § 6–9–210 (1975). Nonetheless, the Alabama Supreme Court has held that the omission of those costs simply precludes a lien for that unspecified sum; it does not extinguish an otherwise valid lien for the amount of the judgment itself. *See Bowman v. SouthTrust Bank of Mobile*, 551 So.2d 984, 988 (Ala.1989) ("a statement of the amount of court costs assessed against a judgment debtor is a material requirement of [section 6–9–210], because it is necessary to provide notice of the amount of the lien. Likewise, a statement of the amount of attorney fees assessed against a judgment debtor, such fees being a part of the judgment, is a material requirement of the statute. However, . . . we do not view the omission of a statement of these amounts as precluding the creation of a lien in the Bowmans' favor for the amount of the judgment stated.").

**6.** *See* Fed.R.Civ.P. 62(a); *KRW Sales, Inc., v. Kristel Corp.*, 154 F.R.D. 186, 188 (N.D.Ill. 1994) (weekends and holidays are not counted for purpose of ten-day automatic stay from execution of judgment).

Harless, and against respondent United States. In accordance with the court's May 23, 2000 memorandum opinion and order granting Ms. Harless's motion for summary judgment and denying the United States' motion for summary judgment, it is **ADJUDGED** that the judgment lien recorded by Maurine K. Harless, in her individual capacity, has first-in-time priority over the tax lien filed by the United States. Each party shall bear its own costs.