Linda CARTER, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 01–2304 G/A.

United States District Court,
W.D. Tennessee,
Western Division.

May 21, 2002.

John J. Cook, A. J. Cook, Pietrangelo Cook, Memphis, TN, Daniel Scott Lovett, Law Office of Daniel Scott Lovett, Arlington, TN, for Plaintiff.

Lawrence J. Laurenzi, U.S. Attorney's Office, Memphis, TN, Michael J. Martineau, D. Brian Simpson, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GIBBONS, District Judge.

Before the court are plaintiff's motion for summary judgment, filed on March 12, 2002, and defendant's motion for summary judgment, filed on March 18, 2002. Based on the following discussion, the former motion is granted in part and denied in part, and the latter motion is denied.

This case arises from a tax assessment against Todd F. Brooks, the former husband of plaintiff Linda Carter. (1st Carter Aff. ¶ 3.) On June 19, 1995, while Brooks and Carter were married, the Internal Revenue Service ("IRS") assessed $516,924.15 in unpaid federal income taxes against Brooks—$229,434.45 for 1992 and $287,489.70 for 1993. (Answers to First Set of Pl.'s Interrog. at 5.) During their marriage, including 1992 and 1993, Carter and Brooks filed separate tax returns. *Id.* at 10–11.

Brooks initiated divorce proceedings in April or May 1996. *Id.* at 13. Carter learned of Brooks' federal tax liability during those proceedings. (Carter Dep. at 12–13.) On August 6, 1997, the Circuit Court for Shelby County issued a judgment divorcing Carter and Brooks. *Brooks v. Carter,* No. 152550–3 R.D., at 1 (Circuit Court of Tennessee Aug. 6, 1997) (Final Judgment of Divorce). The judgment stated, in part, that ITT Hartford Mutual Fund Account No. 68901 ("Account No. 68901"), with a then-existing value of $247,045.04, "shall be the sole and separate property of [Carter], and [Brooks] is divested of all rights to ownership of said property." *Id.* at 6. The divorce judgment also stated that "any liability and/or debt that [Brooks] owes to the Internal Revenue Service is his separate property." *Id.*

at 8. The judgment has not been filed with the Shelby County Register of Deeds. (Carter Dep. at 31–32.)

On March 30, 1998, the IRS filed a Notice of Federal Tax Lien against Brooks with the Shelby County Register of Deeds. (Answers to First Set of Pl.'s Interrog. at 10.) The lien, amounting to $516,924.15, consisted of Brooks' federal income tax liability for 1992 and 1993, plus statutory additions. *Id.* at 5; Def.'s Mot. for Summ. J. Ex. 3. Carter did not become aware of the lien until 1999 or 2000. (1st Carter Aff. ¶ 5.)

On June 19, 1998, the IRS served a levy on Hartford Life Insurance Company ("Hartford Life"), attaching all property or rights to property belonging to Brooks. (Answers to First Set of Pl.'s Interrog. No. 7.) By letter dated July 9, 1998, Hartford Life advised the IRS that the levy, which lacked the required approval of the IRS District Director, would not be honored. (Def.'s Mot. for Summ. J. Ex. 7.) On June 16, 1999, the IRS served Hartford Life with a levy which reflected the approval of the District Director. *Id.* Ex. 8. In response, on August 4, 1999, Hartford Life issued two checks to the IRS totaling $527,261.00, including $350,403.12 from Account No. 68901. (Answers to First Set of Pl.'s Interrog. No. 6; Def.'s Mot. for Summ. J. Ex. 10.) The $350,403.12 consisted of the then-existing value of Account No. 68901, $390,958.24, less surrender charges of $1,621.44 and a tax withholding of $38,933.68. (Def.'s Mot. for Summ. J. Ex. 10.)

Carter filed the complaint in this case on April 18, 2001. The sole claim advanced by Carter is that defendant United States of America ("the government") wrongfully levied upon and seized the contents of Account No. 68901. Pursuant to 26 U.S.C. § 7426, Carter seeks a judgment in the

amount of $390,958.24, plus interest and compensatory damages.

Both parties have filed motions for summary judgment. Carter argues in her motion that the government's levy was wrongful for two reasons. First, she contends that it was placed on property in which Brooks had no interest. Second, Carter claims that she qualifies as a judgment lien creditor pursuant to 26 U.S.C. § 6323, making her interest in Account No. 68901 superior to the government's lien. In its motion for summary judgment, the government asserts that its levy was not wrongful because its lien on Account No. 68901 is superior to Carter's interest. Alternatively, in the event that the levy was wrongful, the government argues that Carter is only entitled to recover $350,403.12, the amount it received from Account No. 68901.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Section 6321 of the Internal Revenue Code ("the Code") provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The lien generally arises when an assessment is made and continues until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322. Since a federal tax lien is not self-executing, the Code provides the government with two options for the collection of unpaid taxes. The first option, irrelevant to the matter at hand, is a lien-foreclosure suit. 26 U.S.C. § 7403(a). The second option is the administrative levy, a provisional remedy which typically "does not require any judicial intervention." *Id.* § 6331(a); *United States v. Rodgers,* 461 U.S. 677, 680–82, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

■ Elaborating on the second option, in the event that a taxpayer's property is held by another, it is customary to serve notice of the levy upon the custodian. 26 U.S.C. § 6332(a). Such notice gives the IRS the right to all property levied upon and creates a custodial relationship between the person holding the property and the IRS, bringing the property into the constructive possession of the government. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). The levy, however, does not determine whether the government's rights to the seized property are superior to those of other claimants. *Id.* at 721, 105 S.Ct. 2919. Its purpose is to allow the government to promptly secure revenues. *Phillips v. Commissioner*, 283 U.S. 589, 596, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

Carter brings her wrongful levy claim pursuant to 26 U.S.C. § 7426, which states:

(a) Actions permitted.-

(1) Wrongful levy.-If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States.

.    .    .    .    .

(c) Validity of assessment.-For the purposes of an adjudication under this section, the assessment of tax upon which the interest or lien of the United States is based shall be conclusively presumed to be valid.

*Id.* The Sixth Circuit has stated that a levy is wrongful if:

(1) it is placed on property exempt under § 6334; (2) it is placed on property in which the delinquent taxpayer had no interest [at the time the lien arose or thereafter]; (3) it is invalid under § § 6323 or 6324(a)(2) or (b); or (4) the plaintiff's interest in the property is senior to the federal tax lien and will be destroyed by the levy.

*McGinness v. United State*, 90 F.3d 143, 147 (6th Cir.1996) (citing 26 C.F.R. § 301.7426–1(b)). Pursuant to § 6323, a federal tax lien is not valid against a judgment lien creditor until notice of that lien has been properly filed. 26 U.S.C. § 6323.[1]

■ Carter advances two bases for her assertion that the government's levy was wrongful. First, Carter claims that the levy was placed on property in which Brooks had no interest. Second, she contends that pursuant to § 6323, she qualified as a judgment lien creditor before the government filed notice of its tax lien.

Carter's first argument misconstrues the law. Pursuant to 26 C.F.R. § 301.7426–1(b), the critical consideration is whether the taxpayer had an interest in the levied property at the time the tax lien arose or thereafter, not whether the interest existed at the time the levy was issued.[2] *Id.*

1. Sections 6334 and 6324 are of no consequence in this case. Section 6334 lists property which is exempt from a tax levy. 26 U.S.C. § 6334. Section 6324 pertains to special liens for estate and gift taxes. *Id.*

2. The tax lien arose when unpaid taxes were assessed against Brooks on June 19, 1995. *See* 26 U.S.C. § 6322. The record contains evidence suggesting that Brooks possessed an interest in Account No. 68901 on that date or thereafter. In particular, on August 4, 1999, Hartford Life disbursed funds from the account in response to a levy "attaching all property or rights to property" of Brooks. (Answers to First Set of Pl.'s Interrog. No. 6; Answers to First Set of Pl.'s Interrog. No. 6; Def.'s Mot. for Summ. J. Ex. 8.) In addition, in their briefs, neither of the parties contest that Brooks possessed an interest in Account No. 68901 until that interest was extinguished by the divorce judgment.

Therefore, the court rejects Carter's first argument that the government's levy was wrongful.

■ Carter's second argument requires a more elaborate analysis. In adjudicating the priority of competing liens, federal common law prescribes that "the first in time is the first in right." *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954). However, this principle is modified by § 6323, under which a federal tax lien has priority over a competing judgment lien only if the IRS serves proper notice of its lien before the judgment lien is perfected and attached. *United States v. Estate of Romani*, 523 U.S. 517, 524, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998).

■ The court is faced with the issue of whether, by virtue of the divorce judgment, Carter qualifies as a perfected and attached judgment lien creditor of Account No. 68901. Although the government's lien on Account No. 68901 arose on June 19, 1995, notice of the lien was not filed until March 30, 1998. (Answers to First Set of Pl.'s Interrog. at 5, 10.) The record reflects that on August 6, 1997, Carter obtained an interest in Account No. 68901 upon the entry of the divorce judgment but took no further action to perfect this interest.[3] (2nd Carter Aff. ¶ 5.) If the divorce judgment made Carter a perfected and attached judgment lien creditor of Account No. 68901, the government's levy was wrongful pursuant to § 6323 because the judgment was entered before the government filed notice of its tax lien. Otherwise, the government's levy was not wrongful.

■ Regulations promulgated by the IRS define "judgment lien creditor" as follows:

> The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money.... A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established.... If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

26 C.F.R. 301.6323(h)–1(g). To create a state lien, a judgment creditor must first do what is required under state law to cause a judgment to attach to property. *Redondo Constr. Co. v. United States*, 157 F.3d 1060, 1063 n. 4 (6th Cir.1998) (citing *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *City of New Britain*, 347 U.S. at 84, 74 S.Ct. 367; *S & S Gasket Co. v. United States*, 635 F.2d 568, 570 (6th Cir. 1980)). However, federal law governs the issue of when a state-created lien is considered perfected or "choate" such that it will defeat a federal tax lien. *Id.*

Carter qualifies as a judgment lien creditor. A Final Judgment of Divorce was entered by the Circuit Court of Tennessee for the Thirteenth Judicial District at Memphis on August 6, 1997. *Brooks v. Carter*, No. 152550–3 R.D., at 1 (Circuit

---

**3.** In the complaint, Carter argues, in the alternative, that the government's levy was wrongful because she possessed a one-half interest in Account No. 68901 before unpaid taxes were assessed against Brooks on June 19, 1995. As suggested by the government, however, Carter has not offered any evidence which indicates that she possessed an interest in Account No. 68901 prior to the entry of the divorce judgment on August 6, 1997.

Court of Tennessee Aug. 6, 1997) (Final Judgment of Divorce). The authority to decree divorce is vested in both the circuit and chancery courts of Tennessee. Tenn. Code Ann. § 36–4–105. The judgment declared Account No. 68901, specifically designated personal property, to be "the sole and separate property of [Carter], and [Brooks] relinquishes and is divested of all rights to ownership ...." *Brooks v. Carter,* No. 152550–3 R.D., at 8 (Circuit Court of Tennessee Aug. 6, 1997) (Final Judgment of Divorce).

■ The government asserts, however, that Carter did not properly attach the judgment of divorce to Account No. 68901. It contends that Carter failed to register the judgment in Shelby County, as required by Tenn.Code Ann. § 25–5–103. Carter asserts that § 25–5–103 is inapplicable and that registration is not required to enforce the judgment's division of personal property.

Section 25–5–103 of the Tennessee, Code states:

> An execution thereon shall not bind the debtor's legal or equitable interest in stock, choses in action, or other personal property, not liable at law, unless a similar abstract or memorandum is registered within sixty (60) days from rendition of the judgment or decree, in the county where the debtor resides, if the debtor lives in this state, or, if not, then in the county in which the property is located.

Tenn.Code Ann. § 25–5–103.[4] Execution is a process by which the sheriff or another officer satisfies a judgment by levying upon and selling the debtor's property. Alexander E. Conlyn, *Enforcing Money Judgments in Tennessee,* 4 Mem. St. Law Rev. 65, 67 (1973); Black's Law Dictionary 568 (6th ed.1990). The process begins

with a writ of execution, the typical vehicle for enforcing money judgments, which is an order directing an officer to levy upon and sell the judgment debtor's property identified in the writ. Tenn.Code Ann. §§ 26–1–103 to 26–1–104. A levy of execution is the officer's act of appropriating the debtor's property for satisfaction of the debt, resulting in the divestiture of the judgment debtor's title. *Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 443 (Tenn.Ct.App.1994).

Section 25–5–103 is inapposite in this case because a formal execution has not occurred. There is no evidence in the record indicating that a writ of execution was issued in connection with the divorce judgment. It appears that instead of transferring title to Account No. 68901 by means of execution, the circuit court used its statutory authority to award title to Carter in the divorce judgment. Tenn. Code Ann. § 36–4–121(a); *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.Ct. App.1990). Therefore, Carter was not bound by the registration requirement in § 25–5–103.

■ Assuming, *arguendo,* that the divorce judgment qualifies as an execution, an issue arises as to whether Account No. 68901 is property "liable at law." Two cases have addressed the meaning of this phrase. In *Smith v. United States Ins. Co.,* the Supreme Court of Tennessee found that a corporation's choses in action were "liable at law" because § 4765 of Shannon's Code provided that "an execution against a corporation may be levied of its choses in action as well as on goods and chattels," modifying the common law rule that an execution did not impose a lien upon a debtor's choses in action. 126 Tenn. 435, 150 S.W. 97, 99 (1912). More recently, a bankruptcy court held that

---

4. A chose in action is "[a] thing in action; a right of bringing an action or right to recover a debt or money." Black's Law Dictionary 241 (6th ed.1990).

choses in action are "liable at law" under Tenn.Code Ann. § 26–2–202, which states that "[a]ll property, debts and effects of the defendant in the possession of the garnishee, or under his control, shall be liable to satisfy the plaintiff's judgment." *Robby's Pancake House of Florida v. R.K. Walker,* 24 B.R. 989, 998 n. 11 (Bankr. W.D.Tenn.1982). The court reasoned that "property" encompassed choses in action. *Id.*

In light of these cases, the court finds that Tenn.Code Ann. § 36–4–121(a) makes Account No. 68901 "liable at law." Section 36–4–121 states:

> (a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.
>
> .     .     .     .     .
>
> (3) To this end, the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties.

Tenn.Code Ann. §§ 36–4–121(a)(1), (3). To the extent that a divorce judgment qualifies as an execution for the purposes of § 25–5–103, § 36–4–121(a) makes all marital property,[5] including Account No. 68901, "liable at law" by explicitly identifying such property as eligible for divestiture in satisfaction of a judgment. The registration requirement in § 25–5–103 appears to apply only to personal property which is not made expressly subject to divestiture by a separate provision of law. Thus, Carter was not required to register the divorce judgment to attach it to Account No. 68901.

The government also claims that Carter is not a perfected judgment lien creditor. It acknowledges that the divorce judgment reported the value of Account No. 68901 as $247,048.04. *Brooks v. Carter,* No. 152550–3 R.D., at 6 (Circuit Court of Tennessee Aug. 6, 1997) (Final Judgment of Divorce). Nevertheless, the government contends that since Account No. 68901 was comprised of mutual fund shares which fluctuated in value, it was impossible for the court to "establish" the value of the lien, as required by 26 C.F.R. 301.6323(h)–1(g). Carter contends that there is no legal support for the government's position, which, she argues, would have the practical effect of preventing anyone from obtaining a judgment lien under 26 C.F.R. 301.6323(h)–1(g) on personal property other than money.

Although sparse, there is some legal guidance regarding the conditions under which the amount of a lien is "established." The Sixth Circuit has held that this element of perfection is satisfied by a judgment in a court of record for a definite amount of money. *S & S Gasket,* 635 F.2d at 571. It has also indicated, in dictum, that a lien is perfected when "the underlying amount is fixed," "although the total balance of the lien may fluctuate." *Hensley v. Harbin,* 196 F.3d 613, 616 (6th Cir. 1999). The Tenth Circuit determined that a bank possessed a perfected lien on a customer's accounts, despite their fluctuation in value, because the amount owed was a definite amount plus interest at a set rate and the bank monitored the accounts to assure the presence of funds which cov-

---

**5.** There is no indication that, at the time during the divorce proceeding, Account No. 68901 was considered anything other than marital property.

ered the obligation. *Jefferson Bank and Trust v. United States*, 894 F.2d 1241, 1244 (10th Cir.1990).

Applying this guidance to the case at hand, the court finds Carter's position more persuasive. The divorce judgment adequately identified Account No. 68901 and specified its value as of August 6, 1997. *Brooks v. Carter*, No. 152550–3 R.D., at 6 (Circuit Court of Tennessee Aug. 6, 1997) (Final Judgment of Divorce). The foregoing cases indicate that perfection of a lien is not inhibited by fluctuation in the lien's value so long as the value can be easily calculated from a fixed underlying amount. The value of Account No. 68901, until it was levied upon by the government, was easily determined by multiplying the total number of mutual fund shares in Account No. 68901 by the then-existing value of each share, which was fixed by a well-defined market. Moreover, the government's position is contrary to the plain language of 26 C.F.R. 301.6323(h)–1(g), which clearly contemplates judgment liens on personal property other than money, despite the fact that such property often fluctuates in value. Therefore, in addition to identifying the lienor and property subject to the lien, the divorce judgment "established" the value of the lien and, thus, perfected it for the purposes of 26 C.F.R. 301.6323(h)–1(g).

To summarize, the court finds that pursuant to 26 C.F.R. 301.6323(h)–1(g), Carter is a judgment lien creditor of Account No. 68901. Moreover, Carter's interest in Account No. 68901 became perfected and attached upon the issuance of the divorce judgment on August 6, 1997. Consequently, pursuant to 26 C.F.R. § 301.7426–1(b) and 26 U.S.C. § 6323, the government's levy on Account No. 68901 was wrongful.[6]

The court must now determine the relief to which Carter is entitled for the government's wrongful levy. Carter contends that pursuant to 26 U.S.C. § 7426(g), her judgment should include the amount of $390,958.24 plus interest. In addition, she seeks consequential damages amounting to the costs of this action, including attorney's fees. The government claims that Carter is only entitled to an award of $350,403.24, the amount collected by the IRS from Account No. 68901, plus interest. The government also avers that Carter has not satisfied the statutory prerequisites for the recovery of consequential damages.

■ The first issue concerning relief is whether the judgment will include the value of Account No. 68901 on August 4, 1999, $390,958.24, or the portion thereof transferred to the government by Hartford Life, $350,403.24. The only statutory guidance on this matter is 26 U.S.C. § 7426(b), which states:

(b) Adjudication.-The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

.   .   .   .   .

(2) Recovery of Property.-If the court determines that such property has been wrongfully levied upon, the court may-

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) if such property was sold, grant a judgment for an amount not exceeding the greater of-

**6.** Incidentally, two other federal district courts have determined that an individual can qualify as a judgment lien creditor under 26 C.F.R. 301.6323(h)–1(g) by virtue of a divorce judgment. *Cooper Indus., Inc. v. Compagnoni*, 162 F.Supp.2d 702, 707 n. 2 (S.D.Tex. 2001); *Estate of Harless v. United States*, 98 F.Supp.2d 1337, 1343 (S.D.Ala.2000).

(i) the amount received by the United States from the sale of such property, or

(ii) the fair market value of such property immediately before the levy.

*Id.*

Subsection (b)(2)(C) sets forth the remedies available to Carter. The record indicates that after receiving the government's second levy, Hartford Life sold the mutual fund shares in Account No. 68901 and transferred a portion of the proceeds to the government. (Answers to First Set of Pl.'s Interrog. No. 6; Def.'s Mot. for Summ. J. Ex. 8, 10.) Of the three options, subsection (b)(2)(C) is the only one which addresses the situation in which property is sold to satisfy an IRS tax levy.[7] Consequently, the court must award relief in accordance with this subsection.

On this issue, the court finds Carter's position more persuasive. Pursuant to subsection (b)(2)(C), the court has discretion over the award, bounded only by the requirement that the amount not exceed the greater of the funds received by the government, $350,403.12, or the fair market value of Account No. 68901 immediately before the levy, $390,958.24. In determining an appropriate figure, the court is guided by § 7426(b)(2), which clearly evinces an intent to return a person whose property has been wrongfully levied upon to the financial position occupied before the levy. If adopted, the government's position would render Carter $40,555.12 poorer than she was before the wrongful levy because she presumably cannot recover the amounts retained by Hartford Life for the payment of taxes and surrender charges. Therefore, Carter's award will include the amount of $390,958.24.

The second matter concerning relief is interest. The court is permitted to award interest on the $390,958.24 in accordance with 26 U.S.C. § 7426(g), which states:

(g) Interest.-Interest shall be allowed at the overpayment rate established under section 6621–

. . . . .

(2) in the case of a judgment pursuant to subsection (b)(2)(C), from the date of the sale of the property wrongfully levied upon to the date of the payment of such judgment.

*Id.* Section 6621 states that the overpayment rate shall be the sum of "(A) the federal short-term rate determined under subsection (b), plus (B) 2 percentage points." 26 U.S.C. § 6621. Therefore, in addition to $390,958.24, Carter is entitled to interest calculated pursuant to § 6621, accruing from the date on which Hartford Life sold the mutual fund shares in Account No. 68901 until the date on which the government satisfies the forthcoming judgment of this court.

The final matter concerning relief is the recovery of consequential damages. Carter claims that she is entitled to such damages pursuant to 26 U.S.C. § 7426(h), which states in pertinent part:

(h) Recovery of damages permitted in certain cases.-

(1) In general.-Notwithstanding subsection (b), if, in any action brought under this section, there is a finding that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of this title the defendant shall be liable to the plaintiff in an amount equal to

---

**7.** Subsection (b)(2)(A) is inapplicable because Hartford Life provided the government with cash proceeds, not Carter's mutual fund shares. Likewise, subsection (b)(2)(B) is inapposite because the government levied upon Carter's mutual fund shares, not her money.

the lesser of $1,000,000 ($100,000 in the case of negligence) or the sum of-

    (A) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee (reduced by any amount of such damages awarded under subsection (b)); and

    (B) the costs of this action.

    (2) Requirement that administrative remedies be exhausted; mitigation; period.-The rules of section 7433(d) shall apply for the purposes of this subsection.

*Id.* Section 7433(d) states:

    (d) Limitations.-

    (1) Requirement that administrative remedies be exhausted.-A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.

    (2) Mitigation of damages.-The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have been mitigated by the plaintiff.

    (3) Period for bringing action. Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

26 U.S.C. § 7433(d).

The government argues that Carter is not entitled to consequential damages for four reasons. First, the government claims that the record is devoid of any evidence that Carter exhausted her administrative remedies. Second, it contends that Carter has not presented sufficient evidence of the IRS's intentional, reckless or negligent disregard of Title 26 of the United States Code. Third, the government asserts that Carter has not established that she suffered economic damages proximately caused by the IRS's actions. Finally, it avers that Carter has failed to mitigate any of her alleged damages.

The exhaustion of administrative remedies is addressed by 26 C.F.R. § 7433-1. In pertinent part, this regulation states:

    (d) No civil action in federal district court prior to filing an administrative claim—(1) Except as provided in paragraph (d)(2) of this section, no action under paragraph (a) of this section shall be maintained in any federal district court before the earlier of the following dates:

    (i) The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or

    (ii) The date six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.

    (2) If an administrative claim is filed in accordance with paragraph (e) of this section during the last six months of the period of limitations described in paragraph (g) of this section, the taxpayer may file an action in federal district court any time after the administrative claim is filed and before the expiration of the period of limitations.

    (e) Procedures for an administrative claim—(1) Manner. An administrative claim for the lesser of $100,000 or actual, direct economic damages as defined in paragraph (b) of this section shall be sent in writing to the district director (marked for the attention of the Chief, Special Procedures Function) of the district in which the taxpayer currently resides.

(2) Form. The administrative claim shall include:

(i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;

(ii) The grounds, in reasonable detail, for the claim (include copies of any available substantiating documentation or correspondence with the Internal Revenue Service);

(iii) A description of the injuries incurred by the taxpayer filing the claim (include copies of any available substantiating documentation or evidence);

(iv) The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable (include copies of any available substantiating documentation or evidence); and

(v) The signature of the taxpayer or duly authorized representative. For purposes of this paragraph, a duly authorized representative is any attorney, certified public accountant, enrolled actuary, or any other person permitted to represent the taxpayer before the Internal Revenue Service who is not disbarred or suspended from practice before the Internal Revenue Service and who has a written power of attorney executed by the taxpayer.

26 C.F.R. § 7433–1.

There is evidence in the record that Carter pursued administrative remedies before filing this lawsuit. Carter contends that she contacted the IRS in an effort to recover the funds on October 28, 1999, and again on November 17, 1999, at which time she was referred to the Taxpayer Advocate Office.[8] (2nd Carter Aff. ¶ 8.) On November 24, 1999, Carter faxed documentation regarding her claim to the Taxpayer Advocate Office in Nashville, Tennessee, and learned that her claim was assigned to Patricia Debnam. *Id.* On January 7, 2000, pursuant to her request, Debnam was faxed copies of court opinions in Carter's divorce proceeding. *Id.* On October 18, 2000, Carter was notified that the IRS had rejected her claim. *Id.*

There is no evidence, however, which indicates that Carter complied with the detailed procedures set forth in 26 C.F.R. § 7433–1(e). Carter has not established that she presented her administrative claim to the funds from Account No. 68901 in a writing sent to the district director (marked for the attention of the Chief, Special Procedures Function) of the district which encompasses Memphis. Moreover, there is no indication that Carter submitted her claim in the proper format. Therefore, since Carter has not demonstrated that she exhausted her administrative remedies before filing this suit as required by 26 U.S.C. § 7426(h), she is not entitled to consequential damages, such as the costs associated with this action, for the government's wrongful levy upon Account No. 68901.[9]

In summary, plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff is entitled to judgment on her claim of wrongful levy and an award of $390,958.24 plus interest.

---

**8.** Incidentally, Carter has produced conflicting evidence regarding the time at which she learned that the IRS had recovered funds from Account No. 68901. In her first affidavit, Carter states that she obtained this information in January 2000. (1st Carter Aff. ¶ 7.) In her second affidavit, however, Carter asserts that the knowledge was acquired on October 20, 1999. (2nd Carter Aff. ¶ 7.)

**9.** Having determined that Carter did not exhaust her administrative remedies, it is unnecessary for the court to address the government's remaining grounds for denying Carter's request for consequential damages.

However, her request for consequential damages is denied. Defendant's motion for summary judgment is denied. This order disposes of the matter in its entirety.

IT IS SO ORDERED.